## KINGS COUNTY DEVELOPMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8372.

Circuit Court of Appeals, Ninth Circuit.

Dec. 2, 1937.

Gregory, Hunt & Melvin, William H. Hunt, and Wallace Sheehan, all of San Francisco, Cal., for appellant.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Berryman Green, and F. E. Youngman, Sp.Assts. to Atty. Gen., for respondent.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This case is here upon petition to review a decision of the United States Board of Tax Appeals.

The pertinent facts as found by the Board of Tax Appeals are substantially as follows:

Tulare Lake Basin Water Storage District, located in Kings County, California, is a legally created political subdivision of the State of California.

On October 1, 1926, the petitioner entered into agreements with individuals and corporations, who were landowners in Tulare Lake Basin Water Storage District and interested in and instrumental in the formation of the District, for the sale of certain real property in Kings County. These agreements provided that possession of the lands should be immediately delivered to the several buyers and that interest on the unpaid portions of the purchase price should be paid at the rate of 6 per cent. per annum.

All of said agreements of sale provided that if and when Tulare Lake Basin Water Storage District should agree to perform the terms of the purchase agreements, the buyers should assign said agreements to said District and the District should be substituted in place of the original buyers and would become the principal obligor thereunder. On November 24, 1928, the assignments were duly made to the District by the buyers, and on said date Tulare Lake Basin Water Storage District assumed the liabilities and agreed to perform the obligations of said agreements of sale. The District has paid to the petitioner all interest due and payable under the terms of said agreements.

On or about December 4, 1928, the petitioner agreed to sell and the District agreed

to buy certain other real estate, also located in Kings County, upon terms similar to those of the assigned agreements of purchase and sale and from and after said date the District has paid to the petitioner all interest due and payable thereunder.

No bonds were issued by the District in consideration of the purchase by it of any of the lands under any of the above agreements. Payments of the principal sums due under the agreements were made by the District in cash. During 1930 the District issued and delivered to the petitioner its warrants for $55,994.47, being for interest upon the purchase price of the lands agreed to be sold by petitioner to said District under the above-mentioned agreements of sale. These warrants were presented to and paid by the county treasurer of Kings County during the year 1930.

In its income tax return for said year 1930, the petitioner reported the sum so received as interest and the tax thereon was paid. Respondent, the Commissioner of Internal Revenue, determined that there was a deficiency of $886.72 in respect of petitioner's income tax for 1930, and so notified petitioner. Petitioner thereupon applied to the Board of Tax Appeals for a redetermination of its tax liability and, in its petition for redetermination, claimed an overpayment of $6,846.25, resulting from the fact that, in computing petitioner's tax, there had been included as taxable income the above mentioned sum of $55,994.47 and other sums not here involved, all of which petitioner claimed were exempt under section 22(b) (4) of the Revenue Act of 1928. The Board held that petitioner had overpaid its tax, but that the sum of $55,994.47 was not exempt. Accordingly, the amount of petitioner's overpayment was determined by the Board to be, not $6,846.25, as claimed by petitioner, but only $100.85. This decision is before us for review.

The statute designates as tax-free, interest upon "the obligations of a State, Territory, or any political subdivision thereof." Revenue Act 1928, § 22(b) (4), 26 U.S.C. A. § 22 note.

Treasury Regulations 74, Art. 84, promulgated under said Revenue Act, contains the following: "Obligations issued by or on behalf of the State * * * or a duly organized political subdivision acting by constituted authorities * * * are the obligations of * * * a political subdivision thereof."

It being conceded that the Tulare Lake Basin Water Storage District is a political subdivision of the State of California, the sole remaining question involved in this petition to review then is whether interest received by petitioner from said District on these installment agreements of purchase and sale of land in the District is exempt from taxation within the meaning of the above statute.

The respondent argues that the intent of the statute is to exempt from the tax only such interest as is paid on obligations as are evidenced by bonds or like securities and which arise from an exercise of the borrowing power by the state or its political subdivision and that the exemption does not extend to interest paid by the District on its agreements with petitioner.

The petitioner insists that the exemption of the statute extends to interest on all obligations of the state, or its political subdivisions, those which arise from promissory notes, warrants, or other interest-bearing contracts, as well as those evidenced by bonds or like securities.

Stripped of indirection these transactions amount to the purchase of the lands in question by the Tulare Lake Basin Water Storage District from petitioner under agreements providing for interest on deferred payments.

If instead of entering into these agreements, whereby the District used its credit to acquire these lands and pledged itself to make the payments, it had issued bonds or given other such securities to effectuate the same purpose, concededly the interest thereon would be exempt from taxes under the provisions of the statute. Did Congress intend to limit the exemptions as to the interest on obligations of a state or one of its subdivisions only to such as are evidenced by some particular form of obligation?

The respondent strongly relies upon the case of American Viscose Corp. v. Commissioner (C.C.A.) 56 F.2d 1033, and the case of United States Trust Co. of New York v. Anderson (C.C.A.) 65 F.2d 575, 89 A.L.R. 99. In both of these cases the obligations discussed were not based upon contractual relationships between the parties as in the case at bar, but were for claims arising by operation of law.

In the Viscose Case, supra, the United States had refunded income taxes illegally collected and pursuant to the statute there

was included in the refund, interest on the amount that had been so collected. The court there said (56 F.2d 1033, at page 1034): "The exemptions of Congress were evidently meant to aid in the flotation of government bonds and securities by making them tax free and, therefore, more attractive to investors. We see no reason why the construction of the statute should be so broadened as to cover a transaction which had no relation to the flotation of securities, but was one where the government had wrongfully collected money, and, in righting the wrong, had, pro tanto, compensated therefor by paying interest."

In the United States Trust Co. Case, supra, the question was whether the statutory exemption from taxation of "the obligations of a State * * * or any political subdivision thereof," covered interest received upon a condemnation award. The court held it did not and in concluding its opinion used this language (65 F.2d 575, at page 580, 89 A.L.R. 99): "In the present case there was no bargaining, nor any possibility of bargaining, between the taxpayer and the city of New York. Title passed to the latter by the exercise of the right of eminent domain. The real estate of the taxpayer was not leased but transferred in invitum to the city. Taxation of the interest upon his award affected no governmental function."

The facts in this case much more nearly resemble those in Norfolk Nat. Bank v. Commissioner (C.C.A.) 66 F.2d 48. There the court held that the interest on money which had been advanced for the construction of roads by private corporations upon the agreement of the state highway commissioner to· repay was not subject to the tax. In rendering its decision the court made use of this pertinent language (66 F. 2d 48, at pages 51, 52): "We need not explore in this case the extent of this exemption discussed in such cases as American Viscose Corporation v. Commissioner (C. C.A.) 56 F.2d 1033; United States Trust Co. v. Anderson (D.C.) 60 F.2d 291; Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304 [71 A.L.R. 1260], for there can be no doubt that the obligations of the state of Virginia under consideration were ·issued to raise funds to be expended for governmental purposes, and the real question for decision is whether the tax was imposed upon these obligations or upon the obligations of the private corporation. It is contended, however, that the obligations in question are not within the description of section 213 of the Revenue Acts, since it requires the taxpayer in his return to submit a statement showing the number and amount of the obligations and securities owned by him. This language, it is said, suggests that the statute relates only to the kind of obligation that,is issued in numbers, and is evidenced by some instrument in writing of the type ordinarily used by the government in borrowing money. But there is no authority in Congress to limit the constitutional exemption from taxation to state obligations of any particular form, and indeed no good reason appears why the language of the section should not be interpreted to include the sort of obligations involved in this case."

While the agreements in the instant case were not given directly for money borrowed and were not in every instance originally executed by the District, it is nevertheless clear that these obligations from the beginning were intended to be assumed and paid by the District. By the arrangements entered into the District procured from the petitioner the necessary lands for the establishment of its irrigation project and the seller received these agreements as evidence of the indebtedness upon which the interest became due and thereby the credit of the District was pledged as firmly and effectively as though ·bonds had been issued in exchange for the lands. We perceive no pertinent distinction between borrowing money for the construction of a highway and borrowing money to finance and establish an irrigation district.

The question then remains: Does the validity of this tax depend upon whether the interest paid is upon an obligation evidenced by a security, such as a bond, as distinguished from an obligation evidenced by an ordinary written agreement of purchase and sale? To place an interpretation upon the word "obligation" so as to exclude such ordinary written contracts is too narrow to be either practical, just, or within the ordinary meaning of the words of the statute and is inhibited by the Constitution of the United States. Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759; Weston v. City Council of Charleston, 2 Pet. (27 ·U.S.) 449, 7 L.Ed. 481.

The decision of the Board of Tax Appeals is reversed, and the case is remanded for further proceedings in conformity with this opinion.