Tom M. DREW and Justa Drew,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 75–2769.

United States Court of Appeals,
Fifth Circuit.

April 25, 1977.

P. Allan Port, Houston, Tex., for plaintiffs-appellants.

Edward B. McDonough, Jr., U. S. Atty., Helen M. Eversberg, Asst. U. S. Atty., Houston, Tex., Scott P. Crampton, Asst. Atty. Gen., Leonard J. Henzke, Jr., Atty., Tax Division, Dept. of Justice, Gilbert E. Andrews, Michael L. Paup, James E. Crowe, Jr., Appellate Section, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BROWN, Chief Judge, AINS-WORTH, Circuit Judge, and JAMESON *, District Judge.

AINSWORTH, Circuit Judge:

This is a suit for refund of federal income taxes in the sum of $2,189.66 paid by appellants Tom M. Drew and Justa Drew for the taxable years 1968, 1969 and 1970. In each of these years taxpayers excluded from their taxable income interest which had been paid on warrants from the Trinity River Authority [TRA], a governmental authority of the State of Texas. The basis of taxpayers' exclusion was Section 103(a) of the Internal Revenue Code of 1954, the relevant portion of which provides that

"Gross income does not include interest on—(1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, . . . ."

Following a deficiency notice, taxpayers paid the amount assessed and filed claims for refund which were denied by the Commissioner of Internal Revenue. They then filed this suit in the District Court for refund. On cross-motions for summary judgment, the District Court entered judgment for the United States, holding that "the warrants herein are not 'obligations' within the meaning of § 103." The correctness of this holding is the subject on appeal. For the reasons set forth below, we affirm the District Court.

There is no substantial controversy from a factual standpoint. TRA is charged with developing the soil and water resources of the Trinity River watershed in east Texas. One of its projects was the construction of Lake Livingston, a reservoir intended primarily to supply water for the City of Houston, Texas. This project was financed by a bond issue of $50,000,000, part of which funds were later used for the purchase of land within the lake site. TRA has the power of eminent domain,[1] and landowners in the designated area were so informed. Taxpayer Tom M. Drew owned land within the project site and TRA negotiated with him, and other landowners whose property was similarly situated, for the purchase of the land. When TRA was unable to reach an agreement with a landowner condemnation proceedings were instituted. Payments for the land were initially made in cash. However, at the suggestion of certain landowners, TRA devised a plan whereby the purchase price could, at the option of the seller, be spread over a period of time, thus giving the landowner the tax benefits of installment reporting as provided under Section 453 of the Internal Revenue Code of 1954 (26 U.S.C. § 453). All landowners were offered three choices for accepting payments: cash for the total purchase price, interest-bearing warrants under the deferred-payment plan, or a combination of cash and warrants. Upon execution and delivery of a warrant, TRA deposited an amount of money equal to the face value of the warrant in an escrow account with the First Southwest Company of Dallas, Texas, an investment banking company. The company would then invest the proceeds in bonds or securities offering a rate of interest in excess of the interest to be paid on the warrant. Interest received on the escrow investments was used to pay the interest on the warrants and for administration costs, and any excess was turned over to TRA.[2]

---

* Senior District Judge of the District of Montana, sitting by designation.

1. *See* Art. 8280–188, Vernon's Tex. Civil Stat. Ann. (Laws of Texas, 1955, c. 518, § 25(a).)

2. The pertinent part of the resolution adopted by the Board of Directors of TRA approving the deferred-payment plan reads:

"Immediately upon execution and delivery of any warrant under the provisions of this resolution the administrative committee shall cause to be transferred an amount of money equal to the face amount of such warrant to a special account with The First Southwest Company of Dallas, Texas, styled "First Southwest Company, agent, Trinity River Authority of Texas (Livingston Project) Land Acquisition Escrow Account." Such fund shall be held in trust for the payment of such warrants as they become due, plus the interest thereon, and shall be invested and reinvested. Interest earned on such funds shall

Taxpayer Drew elected to receive his proceeds of $117,957.20 in the form of three $29,000 warrants and the balance in cash, and on March 2, 1967 he sold his land to TRA under this arrangement. Taxpayers reported on their 1967 income tax return the purchase price of the land as a sale made under threat of condemnation, thus entitling them to an involuntary conversion benefit provided by Section 1033 of the Internal Revenue Code (26 U.S.C. § 1033). However, the interest received by them during the next three years was not included in taxpayers' gross income for those periods based on the exemption contained in Section 103(a). The taxability of the interest is the sole issue for determination.

"Gross income" is defined in Section 61(a) of the Internal Revenue Code of 1954 as "all income from whatever source derived." It is apparent that the interest was income. It is equally clear that as income the interest is taxable unless it comes within one of the exemptions of the Code.

 In determining whether the warrants issued by TRA to taxpayers are "obligations" within the context of Section 103(a), we must start with the rule of statutory construction that "tax exemptions are never lightly to be inferred." *Heiner v. Colonial Trust Co.*, 275 U.S. 232, 235, 48 S.Ct. 65, 66, 72 L.Ed. 356 (1927). There is no doubt that TRA was obligated to pay the interest set forth in the warrants, but the pertinent question is whether that "obligation" is the type contemplated by the statute. The term "obligation" as used in Section 103 has been accorded a very narrow construction. *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211 (1934); *American National Bank of Austin v. United States*, 5 Cir., 1970, 421 F.2d 442; *United States Trust Co. of New York v. Anderson*, 2 Cir., 1933, 65 F.2d 575; *American Viscose Corporation v. Com'r of Int. Rev.*, 3 Cir., 1932, 56 F.2d 1033. The Supreme Court has made it clear that the purpose of Section 103 is to encourage loans in aid of governmental borrowing power.

be used to pay the interest on such warrants and the cost of administering such fund, if

In *Helvering v. Stockholms Enskilda Bank*, *supra*, the Court in construing the statute said:

It is clear from a consideration of the entire section and of the subject-matter that the purpose of Congress, in thus excluding from gross income interest upon such obligations, *was to aid the borrowing power* of the federal government by making its interest-bearing bonds more attractive to investors. *American Viscose Corp. v. Com'r of Int. Rev.* (C.C.A.) 56 F. (2d) 1033. Compare *United States Trust Co. of New York v. Anderson* (C.C.A.) 65 F. (2d) 575, 577, 578, 89 A.L.R. 994. The scope of the word "obligations" as there employed must be narrowed accordingly, *and not extended to include interest upon indebtedness not incurred under the borrowing power.*" 293 U.S. at 87, 55 S.Ct. at 51 (emphasis supplied).

In recognition of this statutory purpose, we have limited the Section 103 exemption to interest paid by governmental entities on obligations issued under their borrowing power. *See American National Bank of Austin v. United States*, 5 Cir., 1970, 421 F.2d 442, 451; *M. C. Parrish & Co. v. Commissioner of Internal Rev.*, 5 Cir., 1945, 147 F.2d 284, 285. In holding that the interest paid to taxpayers had no effect on the borrowing power of TRA, the District Court compared the present transactions to condemnation cases in which interest paid clearly is not tax exempt, citing *United States Trust Co. of New York v. Anderson*, 2 Cir., 1933, 65 F.2d 575; *Holley v. United States*, 6 Cir., 1942, 124 F.2d 909. The rationale of the cited cases in disallowing the exemption is in accord with the statutory intent of the section. It is evident that the obligation incurred by the governmental agency in condemnation award cases is under its power of eminent domain and not in the exercise of its borrowing power. The distinguishing feature between condemnation award cases and those in which the exemption is allowed, *e. g.*, where the

any; and any excess shall be returned to the Livingston Project Construction Fund."

Government floats bonds or securities, is the involuntary nature of the condemnation cases.

In *Holley v. United States, supra,* the Sixth Circuit held that in an agreement between a city and a landowner for payment of a condemnation award in annual installments, with interest on the unpaid balance, such interest was not a debt incurred under the city's borrowing power. The Court remarked that

> "While the contract to defer payment was voluntary, the taking was not, all the proceedings being under the power of eminent domain and necessarily compulsory upon the appellant." 124 F.2d at 910.

Similarly, in *United States Trust Co. of New York v. Anderson, supra,* the Second Circuit held that lump-sum interest paid by the City of New York in a condemnation award proceeding was not exempt under the predecessor to Section 103 because of the nonvoluntary character of the transfer. In concluding that the obligation of the city to pay interest was not an obligation in exercise of its borrowing power, the Court said:

> *"There is no bargaining by the municipality in connection with the matter. The owner of the property condemned is obliged to sell it because of the exercise of the right of eminent domain.* There was no competition between the city and other prospective purchasers, for the city had a prior right to the property and one that was subject only to the requirement that it pay a fair price. On the other hand, state and municipal bonds and securities issued to borrow money, if tax exempt, will command a better price in the market than if they are subject to taxation, because the purchaser is not compelled to buy them and, being a free agent, may be induced by the tax exemption feature to prefer them to private bonds for investment. It disregards the whole purpose of the exemption to apply it to interest upon obligations of a state which it can *compel* a citizen to take in

exchange for the fair value of his property." 65 F.2d at 578 (emphasis supplied).

■ Appellants contend, however, that the exemption afforded by Section 103 is not limited to interest paid on obligations evidenced by some particular form of instrument or incurred in some particular form of transaction, citing *Kings County D. Co. v. Commissioner of Internal Rev.,* 9 Cir., 1937, 93 F.2d 33; *Commissioner of Internal Revenue v. Meyer,* 2 Cir., 1939, 104 F.2d 155. While we agree with this contention, appellants' reliance on those decisions is misplaced.

In *Kings County,* a land development company entered into agreements with certain landowners in Yulare Lake Basin Water Storage District, who were interested and instrumental in the formation of the District, for the purchase of their property. The agreements were subject to assignment to the District (a political subdivision of the State of California) at its option. The District subsequently assumed the obligations of the purchase agreements and according to the terms thereof made payments to the company in cash for the principal sums due and issued deferred payment warrants for $55,994.47 representing interest on the unpaid portion of the purchase price. The development company claimed that the interest was tax exempt under the forerunner of Section 103. The Government argued that the section applied only to interest paid on obligations evidenced by bonds or like securities. In holding that the obligations arose from an exercise of the borrowing power of the District, the Court distinguished *United States Trust Co. of New York v. Anderson, supra,* on the basis that the obligations there were for claims arising by operation of law, quoting the following language from the *Anderson* case indicating the involuntary nature of the transaction: "[T]here was no bargaining, nor any possibility of bargaining, between the taxpayer and the city of New York. Title passed to the latter by the exercise of the right of eminent domain." 93 F.2d at 35.

In *Commissioner v. Meyer, supra,* taxpayer purchased land for the purpose of assuring its availability for future public use by the Village of Suffern, a political subdivision of the State of New York. The land was subsequently sold to the Village for the consideration of cash and interest-bearing promissory notes payable over certain periods of time. Taxpayer was permitted to exclude the interest from income reported on his tax return on the theory that the notes of the Village were "delivered to the respondent to obtain credit on obligations incurred under its borrowing power." 104 F.2d at 157. In so concluding, the Second Circuit distinguished its former decision in *United States Trust Company of New York v. Anderson, supra,* because of the compulsory nature of land transfers under the condemnation proceedings, commenting that the interest paid in *Anderson* "was payable not by virtue of any contract *under which credit was obtained* but because required by law as part of the just compensation for what was *condemned and taken in invitum* for public use." 104 F.2d at 156 (emphasis supplied).

■ Unlike the taxpayers in *Meyer* and *Kings County,* taxpayers in the present case had no alternative but to sell their property to TRA because of the Authority's power of eminent domain. Although this is not in the strict sense a condemnation award case, and the District Court did not so hold, the analogy is persuasive. It is undisputed that taxpayers conveyed their land to TRA under the threat of condemnation. This is explicitly stated in their 1967 tax returns, as the result of which they received the advantage of involuntary conversion for the principal amount of the purchase price. The transaction imposed no burden upon TRA, it was not in need of funds to purchase the land involved. The necessary

money had already been acquired through its initial bond issue.[3] The manner in which the purchases were made was at the suggestion of and for the benefit of the landowners. The fact that TRA allowed them and other landowners to elect to receive compensation on a deferred basis, and thereby to obtain the additional tax advantage of installment reporting, did not convert the transaction to a voluntary one.[4] Likewise, the incidental circumstance that TRA realized a profit on its escrow investments does not compel the conclusion that the issuance of the warrants was an exercise of its borrowing power to obtain credit.

The factual similarities between this case and *Anderson* and *Holley, supra,* convince us that the District Court was correct in holding that the taxing of the interest paid had no effect upon the borrowing power of TRA, and thus the interest was not exempt under Section 103(a) as interest on the obligations of a political subdivision of the State of Texas.

AFFIRMED.

JOHN R. BROWN, Chief Judge, concurring:

I concur fully but I emphasize that this decision is for this day and train only.

---

**3.** As additional funds become necessary they are obtained in like manner. According to the deposition of Paul Cauthan, a Director and former President of TRA, it was subsequently realized that $50,000,000 would be insufficient and, since the initial bond issue, TRA has twice issued Completion Bonds and contemplates a third issue when it is ascertained the amount of funds needed to complete the land acquisition.

**4.** *See Holley v. United States,* 6 Cir., 1942, 124 F.2d 909.