Spencer D. and Mary Jane STEWART,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 83–1731.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 1984.

Decided July 31, 1984.

As Amended Nov. 13, 1984.

**412**

James Powers, Fennemore, Craig, Von Ammon, Udall & Powers, Phoenix, Ariz., for plaintiffs-appellees.

Glenn L. Archer, Jr., Elaine Ferris, Dept. of Justice, Washington, D.C., for defendant-appellant.

Before WALLACE, FLETCHER and FERGUSON, Circuit Judges.

**PER CURIAM:**

The Commissioner of the Internal Revenue Service determined a deficiency in Spencer and Mary Stewart's 1969 and 1970 tax returns based on the reporting of two transactions: the sale of a water utility system and a sale of securities. The Stewarts paid the deficiencies and sued for a refund. The district court found three errors in the Commissioner's determination, and entered judgment for $50,168.81. The government challenges the following three determinations made by the district court:

1. Interest the City of Phoenix paid the Stewarts on the deferred payment of the purchase price of a water utility system is exempt from federal income tax under Internal Revenue Code § 103(a)(1), which exempts from gross income "the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing ..." I.R.C. § 103(a)(1) (1970).

2. Under Section 453 of the Internal Revenue Code, providing for reporting of income from installment sales, the Stewarts were entitled to deduct a proportion of the cost of the utility system from each installment payment received in 1969, even though they had erroneously deducted more than the entire cost in 1968 (the first installment year), because the Commissioner is precluded by the statute of limitations from adjusting his 1968 tax return. See I.R.C. § 453 (1970).

3. The Stewarts were entitled to report income on a sale of stock to a corporation under the installment sales method, even though Spencer Stewart effectively controlled the corporation and the corporation used the stock to pay off a loan he had guaranteed.

We vacate the district court's judgment on the first issue, reverse on the second, and affirm on the third.

## I. SALE OF THE WATER UTILITY

### A. *Facts.*

The Stewarts owned a water utility originally located just outside Phoenix's city limits. The City expanded into the territory in which the Stewarts' utility operated, and initiated negotiations to purchase the utility. Arizona law requires the City to pay a fair price for a utility, which may be determined by agreement, arbitration, or condemnation. Ariz.Rev.Stat.Ann. § 9–515 (1977). Had negotiations been unsuccessful, the City would have condemned the property. A few days earlier, the City had acquired another utility owned by the Stewarts, but they had been unable to agree on a price. They had agreed to a sale, with the price to be determined by a court in a condemnation action. See *Stewart v. Commissioner,* 714 F.2d 977 (9th Cir.1983). As to the present sale, the City and the Stewarts agreed on a purchase price which the City would pay over a five-year period. It would pay interest on the unpaid balance at the rate of 6% per year. In 1968, the Stewarts reported a payment of $325,000. They calculated their cost or "basis" in the property as $671,758.88. Accordingly, they deducted $161,593 (a proportionate share of the total basis) as nontaxable recovery of basis and reported $163,407 as taxable capital gain.

The Stewarts later discovered that the actual basis in the property was only $28,268. In 1969 and 1970 they deducted a

proportionate share of the actual basis from the payments the City made. They did not report the interest the City paid as taxable income.

## B. *Interest.*

■ Section 103 of the Internal Revenue Code exempts from income interest paid on the obligations of a state or subdivision. I.R.C. § 103 (1970). "Obligations" are not limited to bonds or other securities, but may include interest paid under an agreement for the sale of property. *Kings County Development Co. v. Commissioner*, 93 F.2d 33 (9th Cir.1937).

■ The government contends the interest paid here is equivalent to that paid under legal obligation in connection with a condemnation action. Such interest is not exempt. *See Stewart v. Commissioner*, 714 F.2d 977, 983 (9th Cir.1983). *Stewart* involved the Stewarts' earlier sale of another utility to the City of Phoenix. In that case, Stewart and the City could not agree on a purchase price and a condemnation action was filed. Later, the City agreed to pay a minimum price in exchange for immediate possession of the utility. The balance would be paid after the price was determined by the court.

State law allowed the City to obtain immediate possession of property it sought to condemn only if it deposited with the court an amount equal to double the probable damages, or if the parties stipulated to some other arrangement. The City agreed to pay 6% interest on the unpaid balance, from the date it obtained possession. The parties submitted their agreement to the court, and the court entered an order approving it. Eventually, the court entered a judgment in favor of the Stewarts that included about $240,000 interest.

■ This court held the interest was not excluded from income under section 103, noting that the purpose of the statute is to protect the state's borrowing power. "Where a government's obligation to pay interest arises solely by operation of law, however, taxing the receipt of such interest does not adversely affect the government's

ability to borrow money." *Stewart*, 714 F.2d at 981. To determine whether interest paid by a city is excluded, the court must determine whether the "obligation to pay interest arises by operation of law, rather than as the result of voluntary bargaining." 714 F.2d at 983. The court concluded that the interest was not excluded because "although the taxpayer's agreement to surrender immediate possession of the utility was voluntary, the City's obligation to pay interest at the legal rate was not." 714 F.2d at 984.

This case is different from *Stewart* because here no condemnation proceedings were ever instituted. Therefore, the City was under no legal obligation to pay interest as it was in *Stewart*. The government argues that this case should nevertheless be treated like a condemnation case because the City could have condemned the property and would have done so had the parties not been able to agree on a price. The government relies on *Drew v. United States*, 551 F.2d 85 (5th Cir.1977). In *Drew*, the taxpayer sold property to a river authority under threat of condemnation, although condemnation proceedings were never actually begun. Although the Authority had the money to pay for the property, it agreed to pay in installments with interest so that the taxpayer could obtain the tax advantages of installment reporting. The court held the interest was not excluded, even though there was no actual condemnation. Because the sale was made under the threat of condemnation and therefore involuntary, the Authority did not use its "borrowing power" to obtain credit; rather, it agreed to the arrangement solely for the seller's benefit.

■ We follow *Drew* in recognizing that, for the purposes of section 103, a sale made under threat of condemnation is indistinguishable from one in which condemnation proceedings are actually begun. In either case, the seller has no real choice but to sell. Given the threat of legal proceedings and the possibility of a resulting legal obligation to pay interest at the statutory rate, we cannot assume, as we can outside

a condemnation context, that the City's borrowing power came into play at all.

■ The district court found *Drew* distinguishable because in that case it was established that the authority had already raised the money to pay for the property and was not in need of credit, whereas here there is no evidence showing whether the installment agreement was made because the Stewarts wanted the tax benefits of installment reporting or because the City wanted credit.[1] The parties stipulated that the utility was sold under threat of condemnation. The joint factual stipulation upon which these cross-motions were decided, however, did not address whether the City agreed to the credit arrangement as an exercise of its borrowing power. When a material issue of fact is not addressed in a statement of stipulated facts, summary judgment is improper for either party. *See Rhoads v. McFerran*, 517 F.2d 66, 68 (2d Cir. 1975) (per curiam); *accord West v. Costen*, 558 F.Supp. 564, 575; (W.D. Va. 1983). Therefore, we vacate the district court's grant of summary judgment on this issue and remand for further proceedings.

## C. *Installment Reporting of the Sale Proceeds.*

■ The district court also erred in its decision on the installment reporting of the sale proceeds. Section 453 of the Internal Revenue Code allows a person who sells property on an installment payment plan to report as income "in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price." I.R.C. § 453 (1970). This section allows the seller to report a portion of each payment as non-taxable return of basis. The district court, applying the section literally, allowed the Stewarts to report a portion of the 1969 and 1970 payments as return of basis even though they had already erroneously deducted more than the total basis in 1968. The Commissioner is prohibited by the statute of limitations from adjusting the Stewarts' 1968 tax liability. An adjustment of the formula specified in the statute to account for the earlier error would be, the district court found, an unlawful means of avoiding the statute of limitations.

The government's argument that taxpayers should not be allowed to recover more than 100% of the basis is consistent with the intent of section 453, which normally operates to allow the taxpayer to deduct from the sale proceeds no more than the full basis. The methods provided in the regulations determine taxable income on installment sales in situations where the total selling price is uncertain (as when the price depends on profitability of a business sold) or is changed. They appear designed to apportion fairly the recovery of basis over the years of payment, but they do not allow for recovery of more than the full amount of the basis. *See* Treas.Reg. § 1.453 (1970). This case is unusual. The change is in the basis. Normally the basis is known with certainty at the time of the sale and does not change. Adjustment of the installment method to accommodate a change in the basis is thus not specifically contemplated in the Code or Regulations. An overly literal interpretation of the language of the statute, that allows for recovery of more than the entire basis, was never intended.

The Stewarts rely on *Commissioner v. Laguna Land & Water Co.*, 118 F.2d 112 (9th Cir.1941), to support their interpretation. In that case, the taxpayer bought a tract of land and subdivided it into lots. Treasury regulations required that a portion of the basis be allocated to each lot. In earlier years, an erroneously high basis had been used, so that before the tax years in question all of the true basis had already been recovered. The government argued that the taxpayer should not be allowed to deduct any basis on the sale of the remaining lots because to do so would allow "double deduction." The court held that a part

---

[1] We note that, similarly, in *Stewart v. Commissioner*, 714 F.2d 977, 980 (9th Cir.1983), it was clear that the credit arrangements were made, not because the City needed credit, but because the full price could not be paid until the court determined what that price would be.

of the total basis should be allocated for each remaining lot.

Although relying on the general principle that income tax is "to be computed on an annual basis and with the factors in the income of the particular tax year," 118 F.2d at 117, the *Laguna* decision rested on the fact that the regulations required the taxpayer "to treat each parcel sold as a separate capital transaction having a separate basic cost and yielding a separate profit in the year of its sale." *Id.* In contrast, there is no indication that Congress intended installment sales to be treated as a number of separate transactions. Installment reporting is not even required; the taxpayer may elect not to use it. *See* I.R.C. § 453(a)(1) (1970).

The Stewarts erroneously deducted their entire basis in 1968, and now seek to deduct part of it again. The applicable principle here is that "when a taxpayer receives a tax advantage from an erroneous deduction, he may not deduct the same amount in a subsequent year after the Commissioner is barred from adjusting the tax for the prior year." *Robinson v. Commissioner,* 181 F.2d 17, 18 (5th Cir.1950). In *Robinson,* the taxpayer paid $29,000 for the rights to cut timber for five years. In 1939 and 1940, he deducted that entire amount as the cost of timber sold in his business. In 1942, because of a legal dispute, he gave up his remaining rights to cut timber, resulting in a loss of $10,000. The taxpayer sought to deduct this amount as a loss in 1942, arguing that the earlier deduction was in error because at that time it was simply a cash investment. The court held that the taxpayer could not claim a second deduction for the amount erroneously deducted. *Cf. Charles Ilfeld Co. v. Hernandez,* 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127 (1934) (corporation could not deduct losses due to diminution in value of subsidiary's stock since the same amounts had already been deducted as net operating losses); *Marwais Steel Co. v. Commissioner,* 354 F.2d 997 (9th Cir.1965) (parent corporation could not deduct amount of loans to subsidiary as losses on liquidation of subsidiary since these amounts had already been deducted as bad debts).

The Stewarts argue that *Robinson* is inapplicable because section 453 "expressly allows them to do what they did." However, the same argument could have been made in *Robinson,* where the statute allowing for deduction of business losses would have "expressly" allowed the deduction sought by the taxpayer. *Robinson* and similar cases are based on the general proposition that the taxpayer cannot deduct the same amount twice. This is not in conflict with the principle, established in *Laguna,* that the government cannot make up for its failure to correct an erroneous deduction in one transaction by disallowing a deduction in a separate transaction. Nor does it allow the Commissioner to avoid the statute of limitations. The Stewarts deducted more than the actual basis of the property in a previous year. They have no basis left to deduct in subsequent years.

## II. SALE OF STOCK

### A. *Facts*

In 1970 the Stewarts sold some of their own securities to Stewart Property Management, Inc. (SPM) and took an installment note for the purchase price. At the time, Spencer Stewart owned 45% of SPM. The other shareholders were Stewart's employees and business associates; all owed money to him. SPM owed money to the bank but did not have the cash to pay it. Stewart had guarantied SPM's loan. After obtaining the securities, SPM transferred them to the bank as collateral for the loan. The bank sold them and used the proceeds to discharge SPM's loan (and also Stewart's guaranty obligation). SPM reported about $3,000 profit on the sale of the securities by the bank. The transaction was intentionally structured so as to give the Stewarts the benefit of installment reporting of the proceeds from the sale to SPM.

The district court held the Stewarts had properly used the installment method to report the proceeds from the sale of securities to SPM.

B. *Installment Reporting.*

██ A taxpayer may use the installment sales treatment even though the buyer resells the property immediately, "only if he does not directly or indirectly have control over the proceeds from the sale or possess the economic benefit therefrom." *Lustgarten v. Commissioner,* 639 F.2d 1208, 1210 (5th Cir.1981).[2] The issue in such a case is whether the corporation is "an independent entity of real substance and whether the sale to it was an actual sale." *Roberts v. Commissioner,* 643 F.2d 654, 656 (9th Cir.1981). The corporation is considered a "mere conduit," and installment treatment denied, if the sale "allowed Taxpayer to secure the control and benefit of the proceeds of the sale on the market as if he had himself sold it directly to the ultimate purchasers." 643 F.2d at 657.

The government contends that under the *Roberts* rule Stewart should not be allowed to treat this transaction as an installment sale. In *Roberts,* the taxpayer sold stock, on installment, to a trust he had set up for the benefit of his children. The trust immediately resold the stock on the open market. The court held the trust was not a "mere conduit" because the taxpayer did not have control over the trustee's decision to resell the stock.

The district court applied the rule expressed in *Roberts,* and concluded that Stewart did not have control over the proceeds of the sale because the bank, and not SPM, had sold the stock. The district court noted, "if the only intermediary involved were SPM, and if SPM had sold the stock on the market the defendant's arguments would possibly have merit." Thus, the bank played a role similar to that of the trust in *Roberts.* We find no basis for reversing the district court's determination. Cases in which the taxpayer has been denied use of installment treatment on the "conduit" theory are ones in which the taxpayer had control of the proceeds, subject only to self-imposed restrictions. *See, e.g., Lustgarten v. Commissioner,* 639 F.2d 1208 (5th Cir.1981) (taxpayer could not use installment reporting for sale of stock to son because, through a series of agreements with the son, he effectively controlled the sale of the stock, the reinvestment of the proceeds in the mutual fund and the placing of those shares in escrow); *Williams v. United States,* 219 F.2d 523 (5th Cir.1955) (self-imposed restriction, created when the taxpayer sold some property and had part of the price placed in escrow to be paid out in installments, did not change the fact that, at the time of the sale, the taxpayer had constructively received the entire payment).

██ Although Stewart may have benefited from the bank's sale of the securities in the sense that the debt he had guarantied was discharged, the evidence here did not show that he effectively controlled the bank's decision to sell the securities or its use of the proceeds. The Stewarts did gain a tax benefit by structuring the transaction in this particular manner, but the taxpayer is not required to structure transactions so as to maximize taxes. *See Roberts,* 643 F.2d at 657. We affirm the district court's finding in favor of the Stewarts on this issue.

The decision of the district court is VACATED in part, REVERSED in part, AFFIRMED in part, and REMANDED.

---

2. Changes in section 453, effective in transactions made after May 14, 1980, would restrict use of installment reporting on sales made to a related person or a corporation in which the taxpayer owns a majority of the stock. Installment Sales Revision Act of 1980, Pub.L. 96–471, 94 Stat. 2247 (1980) (codified at I.R.C. § 453(c) (1982)).