## UNITED STATES TRUST CO. OF NEW YORK v. ANDERSON, Collector of Internal Revenue.

### No. 191.

Circuit Court of Appeals, Second Circuit.
June 12, 1933.

Stewart & Shearer, of New York City (John W. Davis, George L. Shearer, McCready Sykes, Harry J. Campaign, and Marvin Lyons, all of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Samuel C. Coleman and Murray I. Gurfein, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The interests in real estate belonging to the decedent, Isham, were condemned by the city of New York under section 976 of the Greater New York Charter. By virtue of that section, title to the interest in the first plot passed to the city on April 1, 1925, and to the second plot on June 2, 1926. Upon the making of the award in the condemnation proceedings, interest at 6 per cent. was allowed to the property owner from the dates when the city took title. In the case of the first plot condemned, the decedent received his award, with interest, in 1927, and in the case of the second plot in 1928.

Section 213 (b) (4) of the Revenue Act of 1926, 26 USCA § 954 (b) (4), providing certain exemptions from income taxes reads as follows:

Section 213 (b) "The term 'gross income' does not include the following items, which shall be exempt from taxation under this title: * * *

"(4) Interest upon

"(A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or

"(B) securities issued under the provisions of chapters 7 and 8 of Title 12 (the Federal Farm Loan Act), or under the provisions of such Act as amended; or

"(C) the obligations of the United States or its possessions.

"Every person owning any of the obligations or securities enumerated in clause (A), (B), or (C) shall, in the return required by this chapter, submit a statement showing the number and amount of such obligations and securities owned by him and the income received therefrom, in such form and with such information as the Commissioner may require.

"In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit), the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt to the taxpayer from income taxes."

The plaintiff-appellant contends that the foregoing section applied to the interest received by the decedent upon his award in the year 1927 and rendered it exempt from taxation.

Section 22 (b) of the Revenue Act of 1928, 26 USCA § 2022 (b), is identical with section 213 (b) of the Revenue Act of 1926, 26 USCA § 954 (b). The plaintiff-appellant contends that it applied to the interest received by the decedent upon his award in 1928 and rendered it similarly exempt.

The questions before us are (1) whether the statutory exemptions from taxation of "the obligations of a State * * * or any political subdivision thereof * * *" covered the interest received by the decedent in 1927 and 1928 upon the condemnation awards; and (2) whether, if they did not, taxation of these interest items under the general provisions of the Revenue Acts of 1926 and 1928 was beyond the constitutional power of Congress because it involved taxing a state instrumentality.

There is no doubt that the clause exempting from taxation "obligations of a State * * * or any political subdivision thereof" may be so interpreted as to embrace almost anything which a state or municipality is bound to pay and may thus exempt income which is within the taxing power of the United States. The question is how broadly the word "obligations" is to be construed and just what income is covered by the exemption.

In determining the scope of the word we must bear in mind the settled rule of construction that "tax exemptions are never lightly to be inferred" (Heiner v. Colonial Trust Co., 275 U. S. at page 235, 48 S. Ct. 65, 66, 72 L. Ed. 256), and will not be applied to a particular case unless granted in the statute in plain terms (Denman v. Slayton, 282 U. S. at page 519, 51 S. Ct. 269, 75 L. Ed. 500; Phœnix Insurance Co. v. Tennessee, 161 U. S. at page 177, 16 S. Ct. 471, 40 L. Ed. 660; Chicago, etc., Railroad v. Guffey, 120 U. S. at page 575, 7 S. Ct. 693, 30 L. Ed. 732; Vicksburg, etc., Railroad Co. v. Dennis, 116 U. S. at page 668, 6 S. Ct. 625, 29 L. Ed. 770; Philadelphia, etc., Railroad v. Maryland, 10 How. at page 393, 13 L. Ed. 461).

The phrase exempting "interest upon * * * the obligations of a state * * * or any political subdivision thereof" has been used in every Revenue Act since the adoption of the Sixteenth Amendment to the Constitution of the United States. At the time that amendment was proposed, it was argued that it would place the borrowing capacity of the states at the mercy of the federal taxing power. On February 8, 1910, Senator Borah submitted to the Senate a resolution No. 175 directing the Judiciary Committee to report whether "the proposed amendment * * * would if adopted authorize Congress to lay a tax upon incomes derived from state bonds and other municipal securities or would authorize Congress to tax the instrumentalities or means and property of the state or the salary of state officers." Cong. Rec. vol. 45, p. 1585.

It is clear from the wording of the foregoing resolution that the author had particularly in mind the question whether the amendment would adversely affect the power of the states and their political subdivisions to borrow money.

In Evans v. Gore, 253 U. S. at page 262, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519, Justice Van Devanter, while discussing the income tax legislation under the Revenue Act of 1918 (40 Stat. 1057) which attempted to tax judicial salaries, said that "Congress refused to treat interest received from bonds issued by a state or any of its counties or municipalities as within the taxing power." This statement (at page 262 of 253 U. S., 40 S. Ct. 550, 556) in the footnote of the opinion in Evans v. Gore, as well as the language of the Congressional Conference Report of February 8, 1919 relating to the Revenue Act of 1918 (volume 57, Cong. Rec. 2988) treated

the exemption as designed to safeguard the borrowing power of the states and to prevent taxation which might impair its efficacy or burden the property or instrumentalities of the states. In Denman v. Slayton, 282 U. S. 514, 51 S. Ct. 269, 75 L. Ed. 500, where the deductibility from the gross income of a taxpayer of interest on indebtedness incurred to purchase tax exempt "obligations or securities" was discussed and held not allowable, the Supreme Court plainly had in mind securities issued to borrow money.

■ The language of section 213 (b) of the Revenue Act of 1926 makes it reasonably clear that the exemptions of interest upon "obligations of a State" and upon "obligations of the United States" relate to "obligations" of the same kinds. Subdivision B exempts "securities issued under the provisions of chapters 7 and 8 of Title 12 (the Federal Farm Loan Act)," and subdivision C provides that "in the case of obligations of the United States issued after September 1, 1917 * * * the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof. * * *" It seems manifest, not only because of the objects sought to be attained by the exemptions, but also from the use of the term "issued" both in subdivisions B and C, that the obligations referred to in subdivision A were only such as might be "issued" in the exercise of the borrowing power of the states.

■ An award in condemnation, bearing interest, cannot be regarded as "issued" by a municipality, nor can taxation of the interest received upon such an award in any way affect the borrowing power of the state. There is no bargaining by the municipality in connection with the matter. The owner of the property condemned is obliged to sell it because of the exercise of the right of eminent domain. There was no competition between the city and other prospective purchasers, for the city had a prior right to the property and one that was subject only to the requirement that it pay a fair price. On the other hand, state and municipal bonds and securities issued to borrow money, if tax exempt, will command a better price in the market than if they are subject to taxation; because the purchaser is not compelled to buy them and, being a free agent, may be induced by the tax exemption feature to prefer them to private bonds for investment. It disregards the whole purpose of the exemption to apply it to interest upon obligations of a state which it can compel a citizen to take in exchange for the fair value of his property. The rate of interest is fixed by law, and neither it, nor the amount of the award adjudged as of the time of taking, is a matter over which he has any control.

Not only is the meaning which we attribute to "obligations of a state" in accord with the evident purposes of granting the exemption, but this meaning has been given to similar words in various decisions rendered by the Circuit Courts of Appeal and the Board of Tax Appeals.

In American Viscose Corporation v. Commissioner, 56 F.(2d) 1033, 1034 (C. C. A. 3), the United States had refunded, in 1926, income taxes illegally collected for the years 1917 to 1919, and had added, pursuant to statute, interest on the amount so collected. The taxpayer claimed that the interest was exempt from federal income taxes because it was "upon obligations of the United States," but the Circuit Court of Appeals of the Third Circuit held that it was not exempt, saying:

"The exemptions of Congress were evidently meant to aid in the flotation of government bonds and securities by making them tax free and, therefore, more attractive to investors. We see no reason why the construction of the statute should be so broadened as to cover a transaction which had no relation to the flotation of securities, but was one where the government had wrongfully collected money, and, in righting the wrong, had, pro tanto, compensated therefor by paying interest."

It is argued that the American Viscose decision should properly have been put on the ground that the right to a refund arose after September 1, 1917, and that the interest accruing thereupon was expressly subjected to income taxes under the last clause of section 213 (b) (4) (C), Revenue Act 1926, 26 US CA § 954 (b) (4) (C). But the Court of Appeals expressly put its decision on the ground that the word "obligations" meant government "bonds and securities." It evidently made no difference that the words "obligations of the United States," and not the words "obligations of a state," were being interpreted, for the exemptions under section 213 (b) (4) were reciprocal, and the meanings of the two phrases must be regarded as identical.

In Kansas City Southern Railway Co. v. Commissioner, 16 B. T. A. 665, the Board of Tax Appeals held that interest paid by the United States to the Kansas City Southern Railway Company upon deferred payments, due as compensation for the use of its railroad properties, while operated by the

Railroad Administration, was not exempt from taxation as "interest upon obligations of the United States and its possessions." The decision was affirmed by the Circuit Court of Appeals for the Eighth Circuit. Kansas City'Southern Railroad Co. v. Commissioner, 52 F.(2d) 372. The decision of the Board in Missouri Pacific Railway v. Commissioner, 22 B. T. A. at page 295, likewise involved the question of whether interest paid by the Railroad Administration could be taxed and was to the same effect as Kansas City Southern Railway Co. v. Commissioner, 16 B.. T. A. 665.

In Kline v. Commissioner, 26 B. T. A. 745, the Board of Tax Appeals followed the decision of Judge Bondy in the case at bar.

The decision in Hibernia Savings & Loan Society v. San Francisco, 200 U. S. 310, 26 S. Ct. 265, 266, 50 L. Ed. 495, 4 Ann. Cas. 934, is significant. There the validity of a tax imposed by the state of California as applied to checks or orders signed by the Treasurer of the United States was in question. Section 3701 of the Revised Statutes (31 USCA § 742) exempted "stocks, bonds, Treasury notes, and other obligations of the United States \* \* \* from taxation by or under State. \* \* \* authority." While the Supreme Court held that such checks were "obligations of the United States," it determined that they did not come within the exemption. Though the decision does not govern the present case, it shows that the word "obligations" in an exemption clause is to be construed in the light of the general purposes of the exemption and is not necessarily all-embracing.

In view of the foregoing, we think that the District Court was right in holding that interest upon the condemnation awards was not exempt under section 213 (b) (4) of the Revenue Act·of 1926, 26 USCA § 954 (b) (4), or section 22 (b) of the Revenue Act of 1928, 26 USCA § 2022 (b).

█ It is argued that the Office Decision of the Commissioner of Internal Revenue in 1920 (O. D. 591, Cum. Bul. 3, p. 113), holding that interest upon a condemnation award is interest upon an obligation of a political subdivision of a state and is accordingly exempt, ought to be followed.

We are not, however, referred to any continuous governmental practice in conformity with this ruling. The contrary view was taken by the Board of Tax Appeals in Kansas City Southern Railway Co. v. Commissioner, 16 B. T. A. 665, and likewise by the Circuit Courts of Appeal of the Third and Eighth Circuits, and the original ruling of the Commissioner has been expressly revoked. Under such circumstances, there can be no obligation to give the first departmental ruling any conclusive weight. Merritt v. Cameron, 137 U. S. at ·pages 551–552, 11 S. Ct. 174, 34 L. Ed. 772.

█ The appellant finally contends that to tax the interest on the awards is to impose an unlawful burden upon an instrumentality of a state. The answer to this is that the tax was upon the decedent's property, namely, the interest on his awards, and he was in no sense an instrumentality of the state. The functions of the state were neither impaired not affected by the tax, nor could any burden possibly be laid by it upon state instrumentalities.

As Hughes, C. J., said in Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 75 L. Ed. 304, where the Supreme Court held that profits on sales of municipal bonds were subject to federal income taxes:

"The power to tax is no less essential than the power to borrow money, and, in preserving the latter, it is not necessary to cripple the former by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government. \* \* \*" (At page 225 of 282 U. S., 51 S. Ct. 125, 127.) "\* \* · \* Before the power of the Congress to lay the excise tax in question can be denied in the view that it imposes a burden upon the States' borrowing power, it must appear that the burden is real, not imaginary; substantial, not negligible. \* · ·" At page 234 of 282 U. S., 51 S. Ct. 125, 130.

The decision in Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, 52 S. Ct. 443, 76 L. Ed. 815, does not affect our conclusion here. There lands granted by the United States to the state of Oklahoma for the support of public schools and dedicated to state purposes under the State Constitution were leased by the state to a private company for extraction of oil and gas. The state reserved a part of the gross proceeds which was paid into the public school fund, while the lessee was allowed to retain the remainder. In such circumstances, the lease was treated as an instrumentality of the state, and federal taxation upon the income derived by the lessee under it was held to be unconstitutional, because a burden upon an instrumentality of a state. Such a tax might have

interfered with the right of the latter to secure the best terms in bargaining for the leasing of its lands. In the present case there was no bargaining, nor any possibility of bargaining, between the taxpayer and the city of New York. Title passed to the latter by the exercise of the right of eminent domain. The real estate of the taxpayer was not leased but transferred in invitum to the city. Taxation of the interest upon his award affected no governmental function. Group No. 1 Oil Corp. v. Bass, 283 U. S. 279, 51 S. Ct. 432, 75 L. Ed. 1032.

Decree affirmed.