Tom M. DREW and Justa Drew

v.

**UNITED STATES of America.**

**Civ. A. No. 74-H-253.**

United States District Court,
S. D. Texas,
Houston Division.

May 30, 1975.

P. Allen Port, Childress, Port & Crady, William E. Hornbuckle, III, Davis, Davis, Hornbuckle & Durham, Huntsville, Tex., for plaintiffs.

Helen M. Eversberg, Asst. U. S. Atty., Houston, Tex., Howard Weinberger, Lawrence R. Jones, Jr., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION:

This case comes before the court on stipulated facts and cross motions for summary judgment. It is an action for the recovery of federal income taxes paid to the Internal Revenue Service for the taxable years 1968, 1969, and 1970, plus interest. The court has jurisdiction over the action and parties pursuant to 28 U.S.C. § 1346(a)(1).

The Trinity River Authority of Texas, created by the legislature in 1955 is a "governmental agency of the State of Texas and a body politic and corporate" (Sec. 1, Art. 8280–188, Vernon's Ann. Tex.Rev.Civ.St.), charged with developing the soil and water resources of the Trinity River watershed. Among the Trinity River Authority's projects was the construction of Lake Livingston, an impoundment located between Huntsville and Livingston, Texas. The Trinity River Authority was financed by a bond issue of $50,000,000. After Trinity River Authority had acquired a dam site and let a construction contract, representatives began negotiations with the owners of land lying within the designated lake site, with a view to the purchase of the land.

Plaintiff Tom M. Drew owned, jointly with one Glynn Turner, a tract of land within the lake site. After negotiations, Messrs. Drew and Turner sold their land to the Trinity River Authority. Plaintiff Drew received a partial cash payment and three warrants in the amount of $29,000 each. These warrants were issued March 1, 1967, and have paid interest at the rate of 4¾%. The due dates of the warrants were March 2, 1968, March 2, 1969, and March 2, 1970. The plaintiff did not report the interest he received on the warrants in his income for the years at issue.

The question to be decided in this case is whether the interest paid on the warrants by the Trinity River Authority is entitled to the exemption of section 103 (a) of the Internal Revenue Code of 1954. Section 103(a) of the Internal Revenue Code of 1954 provides this exclusion from gross income: "interest on . . . obligations of a State . . or any political subdivision of . . ." a state.

The Government urges the court to focus on the question of whether the

debt was incurred pursuant to the Trinity River Authority's borrowing power or its power of eminent domain. The plaintiffs ask the court to focus on the question of whether or not the obligation incurred fits the definition of "obligation" as it is used in section 103.

■ When a city issues securities and bonds, they clearly constitute "obligations" and the interest paid clearly falls within the statute. When the municipality condemns property and interest is paid, the interest clearly does not fall within the statute. United States Trust Co. of New York v. Anderson, 65 F.2d 575 (2d Cir. 1933); Holley v. United States, 124 F.2d 909 (6th Cir. 1942); Commissioner of Internal Revenue v. Kieselbach, 127 F.2d 359, 361 n. 5 (3d Cir. 1942). The instant case falls into a gray area in between.

■ Implicit or explicit in the cases which have dealt with the subject there is a rationale behind the decision, placing the specific "obligation" within or without the statute. The rationale arises from the fact that the purpose of section 103, which has survived since the first internal revenue laws in 1919, was (a) to relieve states and municipalities from the burden upon their power to borrow money which taxation of interest would impose and (b) to encourage investors to put their resources into what might, without tax-free interest, be unattractive investments in state and local governments. American Viscose Corp. v. Commissioner of Internal Revenue, 56 F.2d 1033, 1034 (3d Cir. 1932); United States Trust Co. of New York v. Anderson, *supra* at 578; Fairbanks, Morse & Co. v. Harrison, 63 F.Supp. 495, 512–513 (N.D.Ill.1945), quoting Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1894).

Clearly, then, the aim of the § 103 exemption and the only rationale behind it is to aid the states and their political subdivisions in the exercise of their borrowing power.

This rationale has been used by courts confronted with cases which presented the question of interest on deferred payments for the purchase of land. The courts were concerned with whether or not, as a practical matter, the actions of the governmental body were taken as an exercise of their borrowing power or of some other power:

It is manifest that the word "obligations" in the statute was not intended to extend to every obligation which included the payment of interest but only to those obligations which were created in the exercise of the borrowing power. See Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, ·79 L.Ed. 211 (1934). But where credit is obtained in consideration for a promise to pay money in the future, together with interest on that money, there is no valid ground for making a distinction between interest paid on bonds duly issued and interest paid on notes duly delivered. In this instance the village purchased the property in part on its credit and gave its interest bearing notes for the remainder of the purchase price not paid in cash. If instead of buying the property in the first place to keep it available for purchase by the village, the taxpayer had advanced the money to the village on its notes and the village had bought the property directly there would have been a patent exercise of the borrowing power. That, too, would have been plain enough had the village sold its bonds to raise the needed money. The practical effect of what it did from the standpoint of its borrowing power was the same when it gave its interest bearing notes for property instead of for cash.

Commissioner of Internal Revenue v. Meyer, 104 F.2d 155, 156, 157 (2d Cir. 1939). A similar analysis was used in Kings County Development Co. v. Commissioner of Internal Revenue, 93 F.2d 33 (9th Cir. 1937) and First National Bank of Birmingham v. United States, 59 F.Supp. 49 (N.D.Ala.1944).

■ In the instant case, as a convenience to the plaintiffs and other sell-

ers of large tracts of land, the Trinity River Authority devised an arrangement whereby at the seller's option the purchase price for the land would be paid partially in warrants falling due over a period of years. Four and three-quarters percent interest was paid on these warrants. The money which was ready to be paid to all of the landowners in cash, at their option, was in the case of plaintiff and those who like him opted for only a partial cash payment, placed into an account which paid interest in excess of 4¾ percent to the Trinity River Authority. The difference in interest was designed to cover administrative costs of the arrangement, but any excess will go to the Trinity River Authority. Because of this as yet unrealized possibility that Trinity River Authority may make some small profit from the arrangement, the plaintiffs contend that the obligation incurred are "obligations" coming within the purview of § 103. However, viewed as a whole, the arrangement is not one primarily for the raising of funds with which to operate the government or even to purchase the land in question. Its primary function was to avoid "income bunching" in the year of sale for the income tax advantage of the seller, and to enhance the purchasing and negotiating power of the Trinity River Authority.

Although this is not a condemnation case and the court does not so hold, it is similar to one to the extent that the taxing of the interest paid has no effect either direct or remote upon the *borrowing power* of the Trinity River Authority. Since the § 103 exemption was designed to unburden and to aid the borrowing power of the governmental entities and since, as August Hand said in United States Trust Co. of New York v. Anderson, *supra* at 577, "In determining the scope of the word [obligations] we must bear in mind the settled rules of construction that "tax exemptions are never lightly to be inferred,'" this court finds that the warrants herein are not "obligations" within the meaning of § 103.

Accordingly, the Government's Motion for Summary Judgment is granted. It is so ordered.

It is further ordered that the Government will prepare an appropriate final judgment in this case within thirty (30) days of the date of the entry of this order, submit it to counsel for plaintiff for approval as to form, and then to the court.