T.C. Memo. 1998-46


UNITED STATES TAX COURT


JOHN R. HERNANDEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17244-96.                    Filed February 5, 1998.


        Tax certificates are sold at public auction by the
tax collector for Pasco County, Florida, for an amount
equal to delinquent real property taxes, interest
accrued thereon, and other costs and charges owed by
the real property owner.  Purchasers bid for the tax
certificates in terms of the rate of interest to be
paid on the face amount of the certificate.  The tax
certificates must be either redeemed or converted into
a tax deed within 7 years of being sold at auction.  P
purchased tax certificates from the Pasco County tax
collector that were redeemed in tax years 1990, 1991,
and 1992 for the face amount of each certificate plus
accrued interest at the rate bid.

        1.  <u>Held</u>:  The statutory notice of deficiency was
issued within period of limitations as properly
extended.

        2.  <u>Held</u>, <u>further</u>, respondent is not estopped from
issuing a statutory notice of deficiency by either the

doctrine of equitable estoppel or as a second examination of books and records.  Sec. 7605(b), I.R.C.

3.  Held, further, tax certificates sold by tax collectors in Florida for delinquent taxes owed on real property are not obligations of a State or political subdivision thereof, and the interest paid thereon is not excluded from gross income under sec. 103, I.R.C.

4.  Held, further, interest paid on redemption of tax sale certificates but not reported on P's joint returns is attributed to P by reason of his dominion and control over amounts received on redemption of the certificates and his failure to show that the income belonged to or should be attributed to other persons.

5.  Held, further, P is liable for accuracy-related penalties for substantial understatements of income tax.  Sec. 6662, I.R.C.


John R. Hernandez, pro se.

Charles Baer, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, Judge:  Respondent determined the following

deficiencies and accuracy-related penalties in petitioner's

Federal income tax:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662 |
|---|---|---|
| 1990 | $7,680 | $1,536 |
| 1991 | 7,139 | 1,428 |
| 1992 | 12,209 | 2,442 |

The issues for decision in this case are:  (1) Whether the

statutory notice of deficiency was issued within the period of

limitations; (2) whether respondent is estopped from issuing the notice; (3) whether interest income from the redemption of tax certificates issued by Pasco County, Florida, is excluded from gross income under section 103;[1] (4) the extent to which receipts from the redemption of the tax certificates are attributable to petitioner; and (5) whether petitioner is liable for accuracy-related penalties under section 6662(d) for substantial understatements of income tax. We sustain respondent's determinations in all respects.

FINDINGS OF FACT

The parties stipulated some of the facts, which, with the corresponding exhibits, are so found and incorporated herein by reference. Petitioner resided in Saint Leo, Florida, at all times relevant to this case.

During the tax years at issue, petitioner was a certified public accountant who was the business manager of an S corporation and operated an accounting service that prepared tax returns for others. Petitioner and Oneta Hernandez (Mrs. Hernandez) had two daughters, Deborah H. Craig (Mrs. Craig) and

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Theresa Collins (Mrs. Collins).[2]  Mrs. Hernandez died prior to respondent's issuance of the statutory notice of deficiency.[3]

For several years, petitioner purchased at public auction tax certificates sold by Pasco County pursuant to Fla. Stat. Ann. sec. 197.432 (West 1989 & Supp. 1997).  Pasco County and other counties in Florida sold certificates for amounts equal to delinquent property taxes, interest accrued thereon, and other costs and charges owed by property owners to the county.  The certificates serve as a means by which the counties fund current government expenditures by transferring the indebtedness incurred by property owners for their property tax delinquencies to the purchasers of the tax certificates.  They also provide a mechanism for eventual collection of the delinquent taxes out of the property against which the assessment was made, either through redemption of the certificates or eventual sale of the property.  Potential purchasers bid at auction to purchase tax

---

[2] The record also refers to Mrs. Collins as "T.H. Coleman", her name from a subsequent marriage.

[3] On May 10, 1996, respondent issued a statutory notice of deficiency to petitioner and Mrs. Hernandez, pursuant to joint returns they filed for the years in issue.  On Aug. 9, 1996, petitioner timely filed a petition with this Court.  On Sept. 30, 1996, respondent filed a Motion to Dismiss for Lack of Jurisdiction as to Oneta B. Hernandez and to Change Caption. Petitioner was served with that motion but did not respond to show that the petition was filed by a fiduciary entitled to institute a case on behalf of Mrs. Hernandez.  On Nov. 5, 1996, this Court granted respondent's motion, dismissing Mrs. Hernandez as a party to this case.

certificates in terms of the rate of interest payable on the face amount of the certificate up to a statutory maximum of 18 percent, with the certificate being sold to the party bidding the lowest rate.[4]

The sale of a certificate creates a tax lien in favor of the certificate holder that is superior to all other liens.[5] Florida law allows property owners or other persons to redeem tax certificates and extinguish the tax liens created thereby by payment to the tax collector of the face amount of the certificate and interest accrued thereon at the rate bid from the date of sale of the tax certificate until the date of redemption.[6] The county tax collector pays the amount received, less service charges, to the certificate holder, who then surrenders the certificate.

---

[4] The interest rate is limited to 18 percent, accrued monthly. Fla. Stat. Ann. sec. 197.172 (West 1989 & Supp. 1997).

[5] The holder of a tax certificate could convert the tax lien and certificate into a tax deed at any time after it had been held for at least 2 years from Apr. 1 of the year of issuance, but prior to its expiration 7 years after the date of issuance. Fla. Stat. Ann. secs. 197.482, 197.502 (West 1989 & Supp. 1997). We note that the tax certificate is worthless once it and the tax lien expire without having been redeemed or converted into a tax deed. See In re General Dev. Corp., 147 Bankr. 610, 613 (Bankr. S.D. Fla. 1992).

[6] The person redeeming the certificate must pay the tax collector all taxes, interest, costs, charges, and omitted taxes, as provided for by law, and, in addition, make additional payments for costs incurred and the interest earned on the certificate.

Petitioner purchased tax certificates with his own funds and with borrowed funds.[7]  Although the Pasco County tax collector issued the certificates purchased by petitioner in several combinations of names, they all listed either petitioner or Mrs. Hernandez as one of the coholders.  For each certificate redeemed, the tax collector issued checks made out to the same persons listed as certificate holders.  Some certificates were issued to Mrs. Hernandez "et al."  Other certificates were issued to Mrs. Hernandez and one or more other persons who were listed on the certificates as alternate holders.  Some certificates were issued to petitioner and one or more alternate holders.  The rest of the certificates were issued to petitioner and Mrs. Hernandez as coholders.[8]

Each time one of the certificates at issue was redeemed, the tax collector paid an amount by check that included both the principal and interest accrued at the rate bid for the purchase of the certificate to the persons listed as coholders of that certificate.  In each tax year at issue, the tax collector issued

---

[7] Petitioner's daughter Mrs. Craig may also have been a source of funds, although whether, and the extent to which, she bought tax sale certificates is unclear from the record. However, the proceeds from the redemption of all the tax certificates at issue were deposited into an account in Mrs. Hernandez' name.

[8] Petitioner also bought certificates in the name of Holy Ghost Fathers, Inc., a religious order, which were redeemed in each of the tax years in issue.  Respondent determined in the statutory notice of deficiency that none of the interest income from those certificates was income to petitioner.

Forms 1099 showing the amount of interest paid on the redeemed certificates and the names of the persons listed as payees:

| Names on Checks and Forms 1099 | 1990 | 1991 | 1992 |
|---|---|---|---|
| O. Hernandez et al. | $23,983.93 | --- | --- |
| D. or T. Collins or J.R. Hernandez | [1]445.09 | --- | --- |
| Mark Craig or J.R. Hernandez | 5,666.40 | $12,727.23 | $10,467.89 |
| V.H. Hernandez or M.L. Hernandez or J.R. Hernandez | 1,911.16 | 758.26 | [2]1,070.18 |
| D.H. Craig or O. Hernandez, or J.R. Hernandez | --- | 4,713.06 | 974.56 |
| O. Hernandez or T.H. Coleman | --- | 6,183.88 | 20,353.64 |
| O. Hernandez or J.R. Hernandez | --- | 8,256.03 | 22,420.97 |
| Eric B. Craig or O. Hernandez | --- | --- | 2,318.06 |
| T. Coleman or J. Hernandez | --- | [1]330.53 | [2]28.02 |
| F.E. Reaves or O. Hernandez | 795.82 | --- | 525.91 |
| J. Campbell or J. Hernandez | [1]737.50 | --- | [3]7,139.70 |
| O. Hernandez, Trustee | --- | --- | 96.11 |
| Nicole E. Craig or O. Hernandez | --- | --- | 2,462.39 |
| Total interest | 33,539.90 | 32,968.99 | 67,857.43 |
| Amount not included in income by respondent | (1,182.59) | (330.53) | (4,668.05) |
| Interest income adjustment on statutory notice of deficiency (rounded) | 32,357.00 | 32,638.00 | 63,189.00 |
| Interest income reported by petitioner as tax-exempt interest income on line 8b of Form 1040[4] | 23,984.00 | 14,440.00 | 42,871.00 |

[1] Amount not included in respondent's adjustment to income in statutory notice of deficiency because it was reported on an income tax return by another person as either income or as tax-exempt income under sec. 103.

[2] Amount not included in statutory notice of deficiency. The record does not reveal whether respondent attributed all or part of this amount to another taxpayer.

³ Only half of this amount ($3,569.85) was included in respondent's adjustment to income in statutory notice of deficiency because J. Campbell reported other half as income.

⁴ Sec. 6012(d) requires that taxpayers report all interest received or accrued that is exempt from the tax imposed by ch. 1.

"T. Collins" was petitioner's daughter, Mrs. Collins. "D. Collins" was petitioner's granddaughter, Mrs. Collins' daughter. Mrs. Collins was also listed as an alternate payee under the name "T.H. Coleman". Mrs. Collins reported $445.09 of interest on her income tax return for tax year 1990 and $330.53 on her income tax return for tax year 1991 as either income or tax-exempt interest.

"D.H. Craig" was Mrs. Craig, petitioner's other daughter. "Mark Craig" was petitioner's grandson. Mrs. Craig was his mother. Mark Craig did not report any interest from amounts received in redemption of tax certificates on income tax returns during those years. In a letter response to an inquiry by respondent's counsel, Mrs. Craig stated that petitioner was acting as her agent in holding the amounts of $4,713.06 for 1991 and $974.56 for 1992 of her income. However, Mrs. Craig did not disclose those amounts on her income tax returns for either year as either income or tax-exempt interest, nor does the record show that petitioner held such amounts in trust or that he paid taxes on those amounts as trustee.

Mrs. Craig had two other children who were listed as "Eric B. Craig" and "Nicole E. Craig" as alternate payees of interest received in redemption of tax certificates. Neither

child filed an income tax return reporting any portion of such interest, nor did any other individual report any such amount on any of his income tax returns as either income or tax-exempt interest.

"V.H. Hernandez" and "M.L. Hernandez" were petitioner's brother, Vincent, and his brother's wife, Mildred, respectively. For tax year 1992, respondent did not include $1,070.18 in adjustments to petitioner's income from interest received in redemption of tax certificates held by petitioner jointly with Vincent or Mildred Hernandez. With respect to amounts reported on Forms 1099 bearing their names and petitioner's name for tax years 1990 and 1991, neither Vincent nor Mildred Hernandez filed an income tax return that reported interest from the redemption of the tax certificates in question as either income or tax-exempt interest. Vincent and Mildred Hernandez signed a document dated February 27, 1984, that purported to appoint petitioner as "Attorney-in-fact" to "represent them before the Tax Collector * * * of Pasco County". This document had no expiration date.

"F.E. Reaves" was Mrs. Hernandez' mother, who died prior to trial at a time not indicated in the record. Ms. Reaves did not file an income tax return in any year at issue that reported amounts of interest earned in redemption of Pasco County tax certificates as either income or tax-exempt interest.

"J. Campbell" was a friend of petitioner.  Petitioner testified at trial that Mr. Campbell was a "coventurer" in respect of the certificates issued in their names.  Respondent did not include in petitioner's income $737.50 of interest received in 1990 on the ground that that interest was attributed to Mr. Campbell.  In 1992, respondent attributed $3,569.85 to Mr. Campbell, or half the interest income reported on the Form 1099 to "J. Campbell or J. Hernandez" for that year.

Every check issued in redemption of the tax certificates at issue, and listed in the amounts described above, was deposited in an account at Florida Federal Savings & Loan Association in Mrs. Hernandez' name to which petitioner had access, including those amounts not contained in respondent's adjustments to petitioner's income.

On September 19, 1991, petitioner and Mrs. Hernandez filed a joint income tax return for tax year 1990.  On September 18, 1992, petitioner and Mrs. Hernandez filed a joint income tax return for tax year 1991.  On October 28, 1993, petitioner and Mrs. Hernandez filed a joint income tax return for tax year 1992.

On August 26, 1994, petitioner and Mrs. Hernandez signed a Form 872, printed by the Government Printing Office on green paper, consenting to extend the period of limitations for tax year 1990 until December 31, 1995.  Respondent's authorized agent signed the form on August 29, 1994.  On March 20, 1995,

petitioner and Mrs. Hernandez signed a second Form 872 with ballpoint pen or pens, extending the period of limitations for tax years 1990 and 1991 until June 30, 1996. Respondent's Appeals officer signed the form on March 27, 1995. This form was a two-page facsimile copy on white paper of a blank printed Form 872.

OPINION

Issue 1. The Statutory Notice of Deficiency Was Issued Within the Period of Limitations

Section 6501(a) provides:

Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

Section 6501(c)(4) provides for an extension of the period of limitations by agreement:

Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

Petitioner pleaded in his petition the expiration of the period of limitations as an affirmative defense. In order to prevail on this issue, petitioner must carry the burden of proof. Rules 39, 142(a); Adler v. Commissioner, 85 T.C. 535, 540 (1985).

In cases such as this one, in which respondent has issued the notice of deficiency to petitioner beyond the 3-year period in 2 of the 3 years at issue, the burden of going forward is on respondent to show that a valid extension of the period of limitations was executed for those years. If respondent makes the required showing, the burden of going forward shifts back to petitioner. The burden of proof, i.e., the burden of ultimate persuasion, however, never shifts from the taxpayer. Concrete Engg. Co. v. Commissioner, 58 F.2d 566, 568 (8th Cir. 1932), affg. 19 B.T.A. 212 (1930); Stern Bros. & Co. v. Burnet, 51 F.2d 1042, 1045 (8th Cir. 1931), affg. 17 B.T.A. 848 (1929); Adler v. Commissioner, supra at 540.

For tax year 1990, petitioner and Mrs. Hernandez signed a valid Form 872, printed on green paper, that extended the period of limitations for that year until December 31, 1995. On March 20, 1995, petitioner and Mrs. Hernandez signed a second Form 872 for years 1990 and 1991, extending the period of limitations for those years until June 30, 1996.

Petitioner argues on brief that the signatures on the signature page of the second extension form were forgeries because the signature page had been altered in some unspecified way, and that the paper of the Form 872 in the exhibit was white, whereas he signed a green Form 872. We have found as fact that the Form 872 dated March 20, 1995, was a two-page facsimile copy

on white paper of a blank Form 872, signed in ballpoint pen by petitioner and Mrs. Hernandez.  Although the Court is not a handwriting expert, cf. Bagby v. Commissioner, 102 T.C. 596, 606 (1994), the signatures of Mr. and Mrs. Hernandez on the form appear to be similar, indeed virtually identical, to their signatures on the first extension of the period of limitations and their signatures on the Forms 1040 they filed for each of the years in issue.  Furthermore, petitioner's insistence that the March 20, 1995, Form 872 was printed on green paper may be easily explained by the fact that he and Mrs. Hernandez signed the first extension, for tax year 1990, which was printed on green paper, and that he incorrectly recollects that extension as the second Form 872 signed by petitioner and Mrs. Hernandez on March 20, 1995, which is on white paper.

Petitioner has produced no evidence to show that the Form 872 dated March 20, 1995, was altered in any way or that the signatures on the form were not those of him and Mrs. Hernandez. Petitioner has neither carried his burden of proof by going forward with evidence that this Form 872 is a forgery, nor has he carried his burden of ultimate persuasion.  Rule 142(a); see also Bybee v. Commissioner, T.C. Memo. 1996-411, affd. without published opinion 129 F.3d 124 (9th Cir. 1997) (taxpayer failed to show that signatures on Form 872 were forgeries).  We find that the Form 872 dated March 20, 1995, is a valid extension,

until June 30, 1996, of the period of limitations for tax years 1990 and 1991.

Petitioner did not file an income tax return for tax year 1992 until October 28, 1993.  On May 10, 1996, respondent issued a statutory notice of deficiency to petitioner for each of the 3 tax years at issue, well within the period of limitations for each such year.

Issue 2.  Respondent Is Not Estopped From Issuing Statutory Notice of Deficiency

Petitioner contends that respondent is equitably estopped from issuing a statutory notice of deficiency for any of the tax years in issue because respondent "has, for a number of years, including 1990, approved Petitioners reporting of tax certificate interest as 'tax-exempt' under * * * section 103".

Petitioner presented no evidence to support this argument until he submitted to the Court a copy of a closing (no-change) letter for tax year 1990, Notice Number CP-2005, dated December 28, 1992, as an attachment to his brief.  Petitioner did not file a motion with the Court for leave to submit evidence after the time provided in our Standing Pre-Trial Order, which was served on the parties on November 21, 1996.  We may exclude from evidence materials not provided in compliance with our pretrial orders, Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996); see also Owens v. Commissioner, T.C. Memo. 1997-538, as an improper attempt to introduce evidence after the record has

closed, Rules 143(b), 151; see also <u>Speer v. Commissioner</u>, T.C. Memo. 1996-323. We therefore do not admit this document into evidence. Rule 160.[9]

Even if we were to admit the letter into evidence, its issuance would not preclude respondent from later issuing a statutory notice of deficiency for that tax year, neither on the grounds of equitable estoppel, <u>Opine Timber Co. v. Commissioner</u>, 64 T.C. 700 (1975), affd. without published opinion 552 F.2d 368 (5th Cir. 1977); see also <u>Fitzpatrick v. Commissioner</u>, T.C. Memo. 1995-548, nor by reason of respondent's possible failure to follow Rev. Proc. 94-68, 1994-2 C.B. 803, and Rev. Proc. 85-13, 1985-1 C.B. 514, <u>Collins v. Commissioner</u>, 61 T.C. 693, 700-701 (1974) (revenue procedure is a directory, not mandatory, set of internal procedures that does not provide a basis for rejecting a statutory notice of deficiency because of a violation of its provisions); see also <u>Fitzpatrick v. Commissioner</u>, <u>supra</u>.

Petitioner also argues that the statutory notice of deficiency is invalid because it is based on a second examination of books and records for tax year 1990. Section 7605(b) provides that the Commissioner, before undertaking a second inspection "of a taxpayer's books of account", must notify the taxpayer in writing that the additional inspection is necessary. However,

---

[9] Petitioner also provided other material with his brief, such as facsimile copies of Florida law on the subject of tax certificates, of which we take judicial notice.

section 7605(b) does not prevent the Commissioner from reviewing a taxpayer's income tax return after inspecting his books and records because a "review of the Form 1040, and accompanying schedules, does not constitute an inspection of a taxpayer's 'books of account.'" Curtis v. Commissioner, 84 T.C. 1349, 1351 (1985) (quoting Benjamin v. Commissioner, 66 T.C. 1084, 1097 (1976), affd. 592 F.2d 1259 (5th Cir. 1977)). We have found nothing in the record to indicate that, for tax year 1990, a second examination of petitioner's books and records occurred within the meaning of section 7605(b). Because we find that no violation of section 7605(b) occurred, we do not reach whether invalidation of the deficiency notice is the proper remedy for such a violation. Curtis v. Commissioner, supra at 1356.

Issue 3.  Income From the Redemption of Pasco County, Florida, Tax Certificates Is Not Excluded From Gross Income Under Section 103

Petitioner contends that interest received on redemption of Florida tax certificates purchased from the tax collector of Pasco County, Florida, is excluded from gross income under section 103(a) as interest earned on State or local bonds. Petitioner argues that tax certificates are State or local bonds voluntarily entered into because they are contracts, between Pasco County and the purchasers, and thus obligations of Pasco County, a political subdivision of the State of Florida. Respondent argues that the tax certificates are not obligations

of a State or political subdivision and that therefore the interest on them is not excluded from gross income under section 103(a). Against the background of our opinion in <u>Barrow v. Commissioner</u>, T.C. Memo. 1983-123, we agree with respondent.

In <u>Barrow v. Commissioner</u>, <u>supra</u>, we considered whether interest earned on redemption of Florida tax certificates was excludable from the holder's gross income under section 103(a). We held, on a motion for summary judgment, that interest on Florida tax certificates was not excluded from gross income because the certificates were neither an exercise of sovereign borrowing power nor obligations of the State of Florida or a political subdivision thereof.

Subsections (a) and (c)(1) of section 103, by their literal terms, exclude from gross income interest on any State or local bond, defined as an obligation of a State or political subdivision thereof.[10] See <u>Newman v. Commissioner</u>, 68 T.C. 433, 446 (1977) (section 103 obligation must be in writing); <u>Kansas</u>

_____

[10] In pertinent part, sec. 103 provides:

SEC. 103(a). Exclusion.-- * * * gross income does not include interest on any State or local bond.

* * * * * * *

(c) Definitions.--For purposes of this section and part IV--

(1) State or local bond.--The term "State or local bond" means an obligation of a state or political subdivision thereof.

City S. Ry. Co. & Affiliated Cos. v. Commissioner, 16 B.T.A. 665, 694 (1929) ("the term 'obligations of the United States' * * * [includes] bonds or other similar evidences of indebtedness"), affd. in part and revd. in part on another issue and remanded 52 F.2d 372 (8th Cir. 1931); see also United States Trust Co. v. Anderson, 65 F.2d 575, 577 (2d Cir. 1933); Newlin Machinery Corp. v. Commissioner, 28 T.C. 837, 841-842 (1957); sec. 1.103-1(b), Income Tax Regs.

Consistent with the notion that exclusions from gross income are to be construed narrowly, Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Harbor Bancorp & Subs. v. Commissioner, 105 T.C. 260, 287 (1995), affd. 115 F.3d 722 (9th Cir. 1997), not all interest-bearing obligations issued by State and local governments qualify as section 103(c)(1) obligations. Courts have long held that, in order to entitle the holder to an exclusion from gross income for interest earned thereon, the subject obligation must have been issued by the State or political subdivision as an exercise of its sovereign borrowing power. See, e.g., Stewart v. Commissioner, 714 F.2d 977, 981-982 (9th Cir. 1983), affg. T.C. Memo. 1982-209; Drew v. United States, 551 F.2d 85, 87 (5th Cir. 1977); United States Trust Co. v. Anderson, supra at 577-578; King v. Commissioner, 77 T.C. 1113, 1118 (1981). This limitation derives from the notion that the purpose of the section 103 exclusion is to enable States and

localities to obtain capital at lower than market rates of interest; the exclusion causes purchasers of tax-exempt bonds to accept interest at lower rates equal to the lower after-tax rates of interest earned by holders of taxable bonds of equivalent risk. United States Trust Co. v. Anderson, supra; see Drew v. United States, supra; King v. Commissioner, supra; see also Bradford, Untangling the Income Tax 243-254 (1986). In the line of cases that formulated and applied this notion, qualification for the exclusion depends on whether the governmental obligation was incurred by operation of law, as where interest is paid at a rate fixed by statute in a condemnation proceeding, or as the result of a voluntary bargain between the State or local issuer and the purchaser, where the rate of interest is established in the marketplace. See also Consolidated Edison Co. v. United States, 10 F.3d 68 (2d Cir. 1993); Stewart v. Commissioner, supra; Drew v. Commissioner, supra. Compare, e.g., United States Trust Co. v. Anderson, supra, with Commissioner v. Meyer, 104 F.2d 155, 156 (2d Cir. 1939).

The distinction is illustrated by King v. Commissioner, supra. There we held that interest received on warrants issued as part of the consideration for land sold to the Trinity River Authority under the threat of condemnation was not excludable from gross income under section 103(a), but that interest received from warrants issued as part of the consideration for

land sold to the Trinity River Authority in a voluntary transaction was so excludable.  The difference in outcome turned on whether the Trinity River Authority had the power to condemn, as it did in respect of the warrants whose interest was not excludable and did not have in respect of the warrants whose interest was excludable.  Id. at 1124.

In the case at hand, there was a voluntary bargain or contract, as petitioner insists.  Each of the tax certificates issued by Pasco County was a contract between the county and petitioner, purchased at auction by petitioner by reason of having submitted the lowest bid in terms of the rate of interest he was willing to accept.[11]  State ex rel. Seville Holding Co. v. Draughon, 173 So. 353, 354 (Fla. 1937); see also In re General Dev. Corp., 147 Bankr. 610, 613 (Bankr. S.D. Fla. 1992).  However, the voluntary bargain that petitioner entered into with the county arose out of petitioner's having made the lowest bid

---

[11] We note that one of the components of the face amount paid by the buyer of a tax sale certificate to the issuer is interest accrued at the statutorily fixed rate of 18 percent from the date of delinquency until the date of sale of the certificate.  Fla. Stat. Ann. sec. 197.172(1) (West 1989 & Supp. 1997).  This interest rate is statutorily fixed, just like the rate of interest paid on obligations incurred in the exercise of eminent domain.  However, the interest component accruing prior to the sale of the certificate has no bearing on whether the holder of the tax certificate entered into the contract voluntarily; it is part of the face amount of the certificate.  The interest component that bears on the purchaser's bargain is the rate of interest bid at auction, which accrues from the date of the auction until the date of redemption of the tax certificate.

in relation to the other participants in the auction with respect to the rate of interest accruing thereafter that he would accept; this voluntary bargain did not change or otherwise affect the amount of the payment received by the county from petitioner or that the county would have received from any other potential purchaser, which was the face amount of the certificate. Accordingly, the decision in this case turns, not on whether petitioner voluntarily contracted with the county, which he did, but rather on the antecedent question of whether a Florida tax certificate is an obligation of a State or political subdivision within the meaning of section 103(c)(1). Newman v. Commissioner, 68 T.C. 433 (1977); Kansas City S. Ry. Co. and Affiliated Cos. v. Commissioner, supra.

In Barrow v. Commissioner, T.C. Memo. 1983-123, we discussed the nature of tax certificates under Florida law, the salient points of which remain unchanged. We cited Florida court opinions that characterize tax certificates as nothing more than evidence of a lien created solely to facilitate expedient enforcement of the obligation of a landowner to pay taxes lawfully assessed. Beebe v. State Supreme Court, 151 So. 298, 299 (Fla. 1933); see also Smith v. City of Arcadia, 185 So. 2d 762, 767 (Fla. Dist. Ct. App. 1966) ("Tax certificates are only a means of evidencing unpaid taxes and to enable the sale thereof

for the purpose of realizing funds for current governmental expenditures'

As we pointed out in Barrow, even though tax certificates are contracts between the issuing locality and the certificate holder, State ex rel. Seville Holding Co. v. Draughon, supra at 354, their sale does not create a contractual relationship of indebtedness between the issuer and purchaser. The sale of the tax certificate at auction is an assignment to the purchaser by the issuer of the landowner's indebtedness to the issuer. The State or local government incurs no obligation to pay any amount to the holder of the tax certificate. In effect, the sale of tax certificates substitutes the holder for the State or local government as creditor of the landowner debtor. At most, the tax collector

> might be called on to act in the capacity of a collection agent for the certificate holder, by taking funds from a landowner who wishes to clear title to his land by paying the taxes, penalties and interest, together with the interest due to the holder of the tax certificate, and transferring those funds to the holder of the tax certificate. * * * [Barrow v. Commissioner, supra.]

In light of the analysis in Barrow and current Florida law, as we apply them to the evidence in the record in this case, we hold that a Florida tax certificate is not an obligation of the State of Florida or of any political subdivision thereof for purposes of section 103. Accordingly, section 103(a) does not exclude from gross income any interest realized at redemption of such certificates.

Issue 4.  Income From the Redemption of Tax Certificates Is Attributable to Petitioner as Determined by Respondent

Petitioner argues that the interest received from the redemption of tax certificates, but not reported on the joint returns for tax years 1990 through 1992, was not income properly attributable to him or to Mrs. Hernandez.  To prevail, petitioner must carry the burden of proving that such income is not attributable to him or to Mrs. Hernandez.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); see also Smith v. Commissioner, T.C. Memo. 1995-402, affd. without published opinion 116 F.3d 492 (11th Cir. 1997).

In each year at issue, petitioner received interest income that was not reported on his joint return for that year from the redemption of certificates held either in his name and the name of another individual or in the name of his wife and the name of another individual.  These amounts were not reported as either gross income, secs. 61, 6012(a), or as tax-exempt interest as required by section 6012(d).  In each instance, the money received from the redemption of the certificates was deposited in Mrs. Hernandez' bank account, to which petitioner had access.  In each instance, the funds used to purchase the tax certificates came from petitioner.  With respect to amounts included in respondent's redetermination of petitioner's taxable income, none of the alternate payees listed on the tax certificates reported these amounts as income on their income tax returns, nor did they

report them as tax-exempt interest as required by section 6012(d). In those instances in which the alternate payee did report such amounts as either income or interest excludable from income under section 103, respondent did not include those amounts in petitioner's income.

With respect to amounts that petitioner claims were income to Mark Craig, petitioner proffered in evidence a letter from his daughter--Mark's mother, Mrs. Craig--claiming that petitioner was holding these amounts "as agent for * * * [Mrs Craig] and * * * [her] minor children". Mrs Craig did not testify at trial.

With respect to amounts of interest received from the redemption of certificates held in his or Mrs. Hernandez' name and those of Vincent or Mildred Hernandez, respectively, petitioner produced no evidence that such amounts were not his income other than a document signed in 1984 by Vincent and Mildred Hernandez purporting to give petitioner a power of attorney. Neither Vincent nor Mildred Hernandez testified at trial. With respect to the remaining persons whose names appeared on the tax certificates as alternate payees, petitioner produced no evidence at all.

Unlike the taxpayer in the "Mexican Lottery Case", Diaz v. Commissioner, 58 T.C. 560, 565 (1972), whose grandmother, "face-to-face with her priest in the courtroom", corroborated every word of his testimony that the lottery tickets in question belonged to his uncle, petitioner failed to bring a single

witness, neither brother, daughter, nor friend, to the courtroom to corroborate his story that he was holding these funds for them.  In failing to do so, petitioner did not carry his burden of proving that these funds belonged to other taxpayers.  By reason of the evidence in the record that the alternate payees did not report these amounts on their income tax returns, and that petitioner exercised dominion and control over these amounts when they were deposited in Mrs. Hernandez' bank account, Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955) ("undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion"), we sustain in its entirety respondent's adjustment to petitioner's income for each year in question.

Issue 5.  Petitioner Is Liable for the Accuracy-Related Penalty Under Section 6662(d) for Substantial Understatements of Income Tax

Section 6662(a) provides for an accuracy-related penalty of 20 percent "of the portion of the underpayment to which this section applies", which is "the portion of any underpayment which is attributable to * * *  Any substantial understatement of income tax."  Sec. 6662(b)(2).[12]  Section 6662(d) defines a

---

[12] For purposes of sec. 6662, sec. 6664(a) provides that an underpayment is

the amount by which any tax imposed by this title exceeds the excess of--

(1) the sum of--

(continued...)

substantial understatement as an understatement of income tax for the taxable year that exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6662(d)(1).  We have sustained respondent's determinations of adjustments to petitioner's income in their entirety in each of the tax years in question; petitioner's understatement of tax exceeds $5,000 and 10 percent of the tax required to be shown on his return.

Respondent is foreclosed from imposing the accuracy-related penalty if a taxpayer has substantial authority for the treatment of the items at issue or if the taxpayer adequately disclosed such items.  Sec. 6662(d)(2)(B)(i) and (ii).  Petitioner has the burden of showing either that he had substantial authority for the tax treatment of the tax certificate interest or that he adequately disclosed his treatment on the returns for each year in issue.  Rule 142(a).

The substantial authority standard is "an objective standard involving an analysis of the law and application of the law to relevant facts.  The substantial authority standard is less stringent than the `more likely than not' standard, * * * but

---

12(...continued)
        (A) the amount shown as the tax by the
     taxpayer on his return, plus

        (B) amounts not so shown previously
     assessed (or collected without assessment),
     over

     (2) the amount of rebates made.

more stringent than the reasonable basis standard".  Sec. 1.6662-4(d)(2), Income Tax Regs.

Section 1.6662-4(d)(3)(i), Income Tax Regs., states that substantial authority for a taxpayer's treatment of an item exists "only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment."

With respect to the issue of whether petitioner may exclude tax certificate interest under section 103(a), petitioner did not have substantial authority to support such an exclusion.  This Court had issued a Memorandum Opinion directly on point, Barrow v. Commissioner, T.C. Memo. 1983-123, long before petitioner filed his income tax return for any of the tax years in question. That Memorandum Opinion is substantial authority that directly contradicts petitioner's position.  Sec. 1.6662-4(d)(3)(iii), Income Tax Regs.

Petitioner stated in open court that he would show that our opinion in Barrow v. Commissioner, supra, is wrong.  He has failed to do so.  Indeed, he has cited no authority at all to support his position, nor has he provided any persuasive reasoning to support his assertions so as to invoke section 1.6662-4(d)(3)(ii), Income Tax Regs.

Petitioner did not cite any authority supporting his failure to report additional tax certificate interest income in the tax years in question, nor did he adduce any credible evidence that

the items in issue were attributable to other taxpayers. Indeed, the alternate payees did not report--or even disclose--these items on their income tax returns for the years in question. Furthermore, the evidence in the record leaves no doubt that petitioner exercised dominion and control over those items of income when they were deposited into Mrs. Hernandez' bank account. The Supreme Court's pronouncement in Commissioner v. Glenshaw Glass Co., supra, has made it axiomatic that items over which a taxpayer has dominion and control are attributable to him and must therefore be included in income. Petitioner had no substantial authority for failing to include items of tax certificate interest income on his tax returns for the tax years in question.

Neither did petitioner adequately disclose his position regarding the treatment of tax certificate interest income. A taxpayer's position may be adequately disclosed either on the return or on a statement attached to the return. Sec. 6662(d)(2)(B)(ii). Petitioner did not attach a statement to his tax returns for the 1990, 1991, and 1992 tax years explaining his position regarding the tax certificate interest income. We therefore examine whether petitioner adequately disclosed his position on his tax returns.

Section 1.6662-4(f)(2), Income Tax Regs., provides that the Commissioner may by revenue procedure prescribe the circumstances under which information provided on the return will constitute

adequate disclosure for purposes of section 6662. The Commissioner issued Rev. Proc. 91-19, 1991-1 C.B. 523, Rev. Proc. 92-23, 1992-1 C.B. 737, and Rev. Proc. 93-33, 1993-2 C.B. 470, listing categories of items for which disclosure on the return constitutes adequate disclosure for the 1990, 1991, and 1992 tax years. None of these revenue procedures lists tax-exempt interest income, which is at issue here.

A taxpayer may also satisfy the requirements for adequate disclosure by providing sufficient information on the face of the return that enables the Commissioner to identify the potential controversy. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987) (citing S. Rept. 97-494, at 274 (1982)); Elliott v. Commissioner, T.C. Memo. 1997-294; Horwich v. Commissioner, T.C. Memo. 1991-465. This method of disclosure requires more than a production of a "clue" with respect to the nature of the controversy. Horwich v. Commissioner, supra (citing Staff of the Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 218 (J. Comm. Print 1982)).

In the case at hand, the controversy concerning the interest income concerns whether tax certificates sold by a Florida county tax collector were obligations of a State or political subdivision thereof, making the interest paid thereon excludable from income under section 103. Petitioner's reporting of interest income on line 8b of his Form 1040 returns, entitled

"Tax-exempt interest income", did not provide respondent with any clue that there was a potential controversy.  The inclusion of the amounts on line 8b, indicating petitioner's position that the amounts set forth were exempt under section 103, did not do the job.  Identification of the correct section of the Code to support a reported position does not, without more, provide sufficient information to enable the Commissioner to identify the potential controversy.  Elliott v. Commissioner, supra.

For the foregoing reasons, we find that petitioner neither had substantial authority nor provided adequate disclosure of his position for the treatment of the items at issue.  Accordingly, we hold petitioner liable for accuracy-related penalties for substantial understatements of income tax under section 6662.

To reflect the foregoing,

Decision will be entered

under Rule 155.