T.C. Memo. 2001-267

UNITED STATES TAX COURT

BERNARD J. PENN AND THELMA I. PENN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8521-99.                      Filed October 4, 2001.

Bernard J. Penn, pro se.

<u>John F. Driscoll</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  Respondent determined a Federal income tax
deficiency for petitioners' 1996 taxable year in the amount of
$6,269 and a section 6662(a)[1] accuracy-related penalty of $1,254.

_____

[1] Unless otherwise noted, all section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

After concessions,[2] we must decide the following issues:

(1)  Whether petitioners failed to include $28,837 of taxable interest income in gross income for 1996.  We hold that they did.

(2)  Whether petitioners must include Social Security benefit payments received during 1996 in their gross income as determined by respondent.  We hold that they must.

(3)  Whether petitioners are liable for the accuracy-related penalty as determined by respondent.  We hold that they are to the extent provided herein.

Background

Petitioners, husband and wife, resided in Pensacola, Florida, when the petition in this case was filed.  At the time of trial, petitioners were both in their late seventies, and petitioner Bernard J. Penn (Mr. Penn) was diagnosed with stomach cancer in late 1995.  Mr. Penn was retired from a career as a practicing attorney and a tax return preparer.  Petitioners jointly filed their Federal income tax return for the year in issue on October 15, 1997, and respondent's examination of such return began after July 22, 1998.

For several years, Mr. Penn and petitioner Thelma I. Penn (Mrs. Penn) purchased tax certificates that were sold at auction

---

[2] At trial, respondent conceded that petitioners may deduct a loss of $3,517.23 for 1996 in connection with the cancellation, pursuant to Florida law, of certain tax certificates they held.

by various Florida counties.  Florida counties are authorized by law to sell at auction tax certificates on real property for which real property taxes have not been paid.  Fla. Stat. Ann. sec. 197.432 (West 1999 & Supp. 2001).  Potential purchasers bid in terms of the rate of interest they will accept on the certificate's face value from the real property owner in the event of a redemption.  Fla. Stat. Ann. sec. 197.432(5) (West 1999 & Supp. 2001).  The face value of a certificate equals the unpaid real property taxes, plus interest or other charges due from the delinquent real property owner at the time of the certificate's sale.  Fla. Stat. Ann. secs. 197.102(3), 197.432(5) (West 1999 & Supp. 2001).

The purchase of a tax certificate creates a tax lien on the underlying real property in favor of the purchaser.  Fla. Stat. Ann. sec. 197.102(3) (West 1999).  Owners of the underlying real property can extinguish such liens by redeeming the outstanding tax certificates on their property.[3]  Fla. Stat. Ann. sec. 197.472 (West 1999).  Outstanding tax certificates are redeemed when the property owner pays the county tax collector the face value of the tax certificate, plus interest accrued at the rate

---

[3] If a tax certificate is not redeemed by the property owner, the certificate's holder can convert the certificate into a tax deed at any time after 2 years from April 1 of the year of the certificate's issuance but before its expiration 7 years after issuance.  Fla. Stat. Ann. secs. 197.482, 197.502 (West 1999 & Supp. 2001).

bid by the certificate's original purchaser. Id. Upon redemption of a tax certificate, the county tax collector must remit the amounts received, including accrued interest, to the certificate's holder, whereupon the certificate is canceled. Id.

Issue 1. Interest Income

Petitioners reported $24,082.49 of taxable interest income and $28,287.52 of tax-exempt interest income on their 1996 Federal income tax return. Respondent determined that petitioners failed to report $28,837 of taxable interest income for that year. Respondent's determination was based on several Forms 1099 received from various entities reporting taxable interest payments made to petitioners. The Forms 1099 providing the basis for respondent's determination are summarized below:

| Payor | Payee | Amount |
|---|---|---|
| Southwest Trust Bank | Mr. Penn | $ 457 |
| Bank of Pensacola | Mr. Penn | 244 |
| Tax Collector - Bay County | Mrs. Penn | 433 |
| Tax Collector - Escambia County | Mr. Penn | 15,525 |
| Tax Collector - Escambia County | Mrs. Penn | 12,178 |
| | Total | $28,837 |

At trial, respondent presented the testimony of Richard Stone, a deputy tax collector with the Escambia County tax collector's office, and documentary evidence establishing that petitioners received $27,703 of interest income from Escambia County, Florida, tax certificates that were redeemed during 1996. We therefore find that petitioners received interest income in

the amount of $27,703 from redeemed Escambia County tax certificates.  Petitioners offered no evidence or argument disputing respondent's determination that they received $433 in interest from Bay County, Florida, in 1996, and we accordingly find that they received such interest.[4]

Having concluded that petitioners received $28,136 of interest income in 1996 from Escambia and Bay Counties, Florida, we must decide whether any portion of this amount may be excluded from petitioners' gross income.  Petitioners argue that the interest reflected on Forms 1099 from Bay County and Escambia County, Florida, as interest earned on redeemed tax certificates is tax-exempt interest under section 103.  In general, subsections (a) and (c)(1) of section 103 exclude from gross income the interest earned on specified State or local bonds, provided such bonds represent an obligation of a State or its political subdivisions.

This Court has previously held that interest received on account of taxpayers' holding Florida tax certificates that are redeemed is not excluded from gross income under section 103 because the certificates are not obligations of the State of

---

[4] As petitioners neither asserted a reasonable dispute nor introduced credible evidence with respect to their receipt of the interest income as determined by respondent, the burden of proof does not shift to respondent in this case.  See secs. 6201(d), (effective for court proceedings on or after July 30, 1996), 7491(a)(effective in connection with examinations commencing after July 22, 1998).

Florida or its political subdivisions.  Hernandez v. Commissioner, T.C. Memo. 1998-46, supplemented by T.C. Memo. 1998-329; Barrow v. Commissioner, T.C. Memo. 1983-123.  The Florida statutes under which the tax certificates at issue in this case were issued and redeemed have undergone no material change since they were analyzed for purposes of section 103 in the foregoing opinions.[5]  Under the reasoning outlined in Hernandez and Barrow, which we need not repeat here, we hold that the interest income petitioners received upon the redemption of the Florida tax certificates they held is not excluded from gross income by section 103.  Accordingly, we sustain respondent's determination that petitioners must include $28,136 of taxable interest in their gross income for 1996.

Petitioners offered no evidence to refute respondent's determination that they received taxable interest income in the

---

[5] Our analysis in Barrow v. Commissioner, T.C. Memo. 1983-123, focused on the nature of the obligations that existed between a tax certificate's purchaser, the property's owner, and the tax collector under Florida law.  Specifically, we looked at secs. 197.116 and 197.156 of the Florida Statutes governing the issuance and redemption of tax certificates, and sec. 197.241 of the Florida Statutes governing a certificate holder's right to convert the certificate into a tax deed.

In the period between our opinions in Barrow and Hernandez v. Commissioner, T.C. Memo. 1998-46, supplemented by T.C. Memo. 1998-329, secs. 197.116, 197.156, and 197.241 of the Florida Statutes were repealed and replaced by secs. 197.432, 197.472, and 197.502, respectively.  The substance of these provisions, however, has not changed in any material manner since they were first analyzed in Barrow or revisited in Hernandez.

aggregate amount of $701 as reflected on Forms 1099 from
Southwest Trust Bank ($457) and Bank of Pensacola ($244).
Accordingly, we find petitioners have failed to meet their burden
of proving that respondent's determination regarding the
foregoing was erroneous, and we sustain it.  See Rule 142(a);
Welch v. Helvering, 290 U.S. 111 (1933).[6]

Issue 2. Social Security Payments

Respondent determined that during 1996 petitioners received
$8,496 in Social Security benefit payments and failed to include
85 percent of such payments ($7,222) in their gross income as
required by section 86.  Section 86 requires the inclusion of a
portion of Social Security benefits in gross income when the sum
of the benefit recipient's "modified" adjusted gross income plus
one-half of his or her Social Security benefits exceeds certain
threshold amounts.  When, in the case of a joint return, this sum
exceeds $32,000, the lesser of such excess or 50 percent of the
Social Security benefits must be included in income.  Sec.
86(a)(1), (c)(1)(B).  When modified adjusted gross income exceeds
$44,000 in the case of a joint return, up to 85 percent of the
Social Security benefits received during the year must be
included in gross income.  Sec. 86(a)(2), (c)(2)(B).  Under
section 86, modified adjusted gross income in general equals
adjusted gross income plus tax-exempt interest income received

---

[6] See supra note 4.

during the year, subject to certain other adjustments not relevant here.  Sec. 86(b)(2).

At trial, Mr. Penn admitted that during 1996 petitioners received Social Security benefit payments totaling $8,496. Petitioners reported adjusted gross income of $24,082.49 for 1996, and we have found that petitioners failed to report an additional $28,837 of taxable interest income for that year. Taking into account the $3,517.23 loss on canceled tax certificates, as conceded by respondent, petitioners' modified adjusted gross income for 1996 therefore equals $49,402.26.  The sum of petitioners' modified adjusted gross income plus one-half of their Social Security benefits ($4,248) is $53,650.26.  Since this amount exceeds $44,000, up to 85 percent of petitioners' Social Security benefits is includable in gross income.  We anticipate that the precise amount of Social Security benefits includable in petitioners' 1996 gross income will be ascertained by the parties in connection with computations under Rule 155.

Issue 3. Accuracy-Related Penalty

We must also decide whether petitioners are liable for the section 6662(a) accuracy-related penalty.  Respondent determined that petitioners' entire tax underpayment for the year in issue was the result of a substantial understatement of tax.  Section 6662(a) provides for an accuracy-related penalty of 20 percent of any tax underpayment that is attributable to a substantial understatement of income tax.  Section 6662(d)(1) defines a

"substantial understatement" as an understatement of income tax for the taxable year that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.

Section 6664(c)(1) provides an exception to the accuracy-related penalty as it applies to any portion of an underpayment where the taxpayer shows that there was a reasonable cause for such portion, and that the taxpayer acted in good faith with respect to such portion.

Regulations interpreting section 6664(c)(1) state:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability.  Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer. * * * [Sec. 1.6664-4(b)(1), Income Tax Regs.]

In court proceedings that arise in connection with examinations commencing after July 22, 1998, the Commissioner bears the burden of producing sufficient evidence to indicate that it is appropriate to impose any penalty provided for in the Internal Revenue Code.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Once the Commissioner's burden is met, the taxpayer bears the burden of establishing that the section 6664(c)(1) reasonable cause exception is applicable.  Higbee v. Commissioner, 116 T.C. at 447.

The examination of petitioners' 1996 Federal income tax return began after July 22, 1998, making section 7491(c) applicable. We find, however, that respondent has met his burden of production. Respondent introduced undisputed evidence that petitioners received $27,703 in interest income and has alleged that petitioners failed to include such amount in gross income. We have found for respondent on that allegation. In petitioners' circumstances, this omission would produce an understatement exceeding the greater of $5,000 or 10 percent of the tax required to be shown on their return. Accordingly, petitioners bear the burden of establishing the applicability of the reasonable cause exception.

We believe that petitioners' reporting of the interest received from the redeemed Florida tax certificates, albeit as tax-exempt rather than taxable, suggests an "honest misunderstanding of * * * law" within the meaning of the regulations. We further believe that this misunderstanding was reasonable given all the facts and circumstances, including Mr. Penn's advanced age and his health problems arising from a diagnosis of stomach cancer in late 1995. These circumstances constitute reasonable cause and good faith with respect to the portion of the underpayment attributable to the interest received from the redeemed Florida tax certificates, in our view. Accordingly, we find that petitioners are not liable for the accuracy-related penalty on this portion of their underpayment.

Although we find that petitioners' underpayment attributable to the Florida tax certificate interest was due to reasonable cause, the portion of petitioners' Social Security benefits required to be included in gross income is not affected by whether the tax certificate interest is exempt from taxation. Both taxable and tax-exempt interest are counted for purposes of the income thresholds that determine the taxability of Social Security benefits. See sec. 86(b)(2). Thus any misunderstanding of Mr. Penn's with respect to the tax-exempt status of interest petitioners received on tax certificates should have had no impact on the computation of the amount of petitioners' Social Security benefits subject to tax. Nothing else in the record suggests that there was reasonable cause for petitioners' failure to include the appropriate amount of their Social Security benefits in income. Accordingly, we find that petitioners are subject to the accuracy-related penalty on the portion of their underpayment attributable to unreported Social Security benefits.

Finally, in the absence of any evidence of reasonable cause, we find that petitioners are liable for the accuracy-related penalty on the portion of their underpayment attributable to unreported bank interest income of $701.

To reflect the foregoing,

Decision will be entered

under Rule 155.